ANTONIO DaCOSTA *et al. d.b.a.* EAST PROVIDENCE FURNITURE COMPANY *vs.* MARY ROSE.

JUNE 6, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. In this action of trespass under general laws 1938, chapter 478, §1, the plaintiffs, copartners doing business as the East Providence Furniture Company, who will hereinafter be referred to as an entity, seek to recover

double damages for an alleged embezzlement by the defendant. The case was tried before a justice of the superior court sitting without a jury. He gave a decision for the plaintiff in the sum of $2898.98, which is double the amount of the embezzlement that he actually found. Under her bill of exceptions the defendant contends that such decision is against the evidence, the weight of the evidence and the law.

The evidence shows that in June 1940 the plaintiff employed William P. Shehan, an accountant, to install a bookkeeping system for its small business, which system consisted mainly of a cash book and ledger. Thereafter the defendant, who had some knowledge of bookkeeping, acted as cashier and bookkeeper.

From about July to September Shehan first instructed and then supervised the defendant in keeping the books. The plaintiff makes no complaint against her during this period, but it does charge her with embezzlement between September 1 and December 12, 1940, when she stopped working under a claim of illness. During this latter period she was in direct charge of the daily cash receipts and of the books. She also made the bank deposits for the plaintiff. The bank deposit slips and the actual deposits are in accord.

It is undisputed that the ledger is accurate and that the cash book contains numerous erasures, alterations and substitutions. Serious discrepancies appear in many instances when the corresponding entries in these books are compared with each other. The following instances are typical: (1) On November 12 the ledger shows a payment by Ernest Machado of $50. In the cash book there is an original entry of $50. This figure is crossed out and $5 written above it. (2) Under date of November 15 the ledger shows a credit to a "Miss Damme" of $49.25, with the notation "Paid in full." No such amount is entered in the cash book, but, where an erasure clearly appears, there is the entry "Chalk .05." (3) On November 19, the ledger shows a final payment by Maria Viera of $25. This entry is also followed by the statement "Paid in full." The cash book entry shows a payment by

that customer on that day of only $2.50, an erasure appearing on the cents side of the decimal point. (4) In the case of Compadre Sebastio, the ledger shows a payment of $40 on November 23. The cash book, on the other hand, shows that the original entry of $40 is crossed out and $4 substituted therefor.

The defendant denies any embezzlement. Her explanation of the discrepancies that we have just mentioned and of all other instances of a similar nature is that all changes in the cash book were made by her at the direction and in the presence of Antonio DaCosta, one of the partners in the plaintiff company. DaCosta positively denies that he ever gave her any such directions or saw her making any such changes. He testified, in substance, that the whole matter came to his knowledge when Shehan audited the books.

Shehan testified that in the course of this audit he asked the defendant to come to the store to explain certain entries which he could not understand. She finally complied with this request. The result of the conference that followed, during which her father and mother were present for part of the time, was that she wrote down seven names and amounts on a piece of paper, which was introduced in evidence as plaintiff's exhibit 5.

The explanations of this paper by Shehan and by the defendant are entirely different. Shehan testified that the defendant admitted taking the amounts set forth in the paper from payments made to her by the customers therein named. The defendant, on the other hand, denied that she wrote the paper at that time. She testified that the paper was written by her while working for the plaintiff and that it was merely a memorandum of changes in the cash book which she made at the direction of either DaCosta or his partner. However, just below the names and amounts admittedly written by her, there is the statement "Listed by Mary Rose Dec. 16, 1940—9.50 P. M." in Shehan's handwriting. If the testimony of Shehan is believed, the items

so listed show that the defendant admittedly converted to her own use the sum of $336.

The evidence is conflicting and irreconcilable. The question of credibility is therefore of prime importance. The rescript of the trial justice shows, in language that admits of no misunderstanding, that he did not believe the defendant and that "she pursued a deliberate and planned program to enrich herself at the expense of her employers." He found that she had actually embezzled the total sum of $1449.49.

The sum just mentioned consists of two items, one of $1222.76 and the other of $226.73. The first item represents the total amount of the differences between twenty-three entries in the cash book and the corresponding entries in the ledger of the type that we have heretofore cited by way of illustration. None of such differences, totaling $1222.76, was deposited. The second item represents the difference between the sum of the cash receipts in the cash book and the sum of cash disbursements, cash on hand, and bank deposits, as testified to by Shehan according to his audit. In this computation, which plainly excludes the shortage of the first item, $1222.76, the trial justice found a further shortage of $226.73. From our consideration of the evidence, we are unable to say that he was clearly wrong in either of these findings.

The defendant admits that by G. L. 1938, chap. 608, §16, embezzlement is deemed to be larceny, but she contends that under G. L. 1938, chap. 478, §1, which is the statute directly involved in this case, the trial justice was without power to double the amount of any embezzlement unless she was proven "guilty of larceny" beyond a reasonable doubt and that there was no such proof or finding in the record before us. This contention raises a serious question as to the construction of said §1, which question has not heretofore been determined by this court. In *O'Brien* v. *Moskol*, 45 R. I. 486, upon which the plaintiff relies in meeting this contention, the point here involved was not passed upon.

General laws 1896, chap. 233, sec. 16, provided that any person who suffered any injury to his person, reputation or estate by the commission of any crime or offense, could recover his damages for such injury, either in an action of trespass or in an action of the case against the offender. It further provided, in contrast with the present statute, that no such action could be commenced for such injury until after complaint was made to some proper magistrate for such crime or offense, and process issued thereon; and whenever any person was *"convicted of larceny"*, he was made liable to the owner of the money or articles taken for twice the value thereof, unless the same were restored, and for the value thereof in case of restoration. (italics ours) This statute was amended by P. L. 1904, chap. 1150 and now appears as G. L. 1938, chap. 478, §1, which provides that in an action under the statute "it shall not be any defense to such action that no criminal complaint for such crime or offense has been made; and whenever any person shall be *guilty of larceny,* he shall be liable to the owner of the money or articles taken for twice the value thereof . . . ." (italics ours.)

The statute, in both its original and present form, explicitly refers to injury resulting from crime or offense. It is an enabling act giving a right of action whene none existed at common law. Before the amendment of 1904, no action for an injury within its scope could be maintained until after criminal proceedings had been instituted. *Baker* v. *Slater Mill & Power Co.,* 14 R. I. 531; *Royce, Allen & Co.* v. *Oakes,* 20 R. I. 252; *Crowley* v. *Burke,* 20 R. I. 793; *Williams* v. *Smith,* 28 R. I. 531. In *Struthers* v. *Peckham,* 22 R. I. 8, at page 13, this court observed that "if the statute in question serves any useful purpose it must be that of public policy. Parties to civil suits cannot waive such a statute, because, if so, they could nullify it. The statute is not for their benefit, but for the public good, and hence the court must take notice of it."

It is significant that the statute has always provided for simple damages in all cases and for double damages only in

a case based on the crime of larceny. The general nature of the statute was considered in *Aylsworth* v. *Curtis,* 19 R. I. 517. In that case the question, on demurrer to a plea in abatement, was whether an action under the statute, then Pub. Stat. 1882, chap. 204, sec. 22, survived the death of the plaintiff. The defendant there contended that the action, though civil in form, was nevertheless a penal action, and hence did not survive. The court overruled the demurrer and held that the action did survive, as the statute was remedial and not penal.

Relying on the *Aylsworth* case, the plaintiff here argues that the statute permits the assessment of double damages on a preponderance of the evidence, as in any civil action. We cannot adopt such view. Granting that the statute is remedial and not penal, yet it is clearly punitive in its provision for double damages and limits such damages to a case where the defendant was guilty of larceny.

The statute in its present form is in one sentence with two independent clauses, which are separated by a semicolon. The first clause, differing from the statute in force before 1904, provides that it shall not be a defense to an action under the statute that no criminal complaint for the alleged crime or offense has been made. The second clause, which deals solely with the crime of larceny, provides that whenever any person shall be "guilty of larceny", instead of "convicted of larceny" as the statute read before amendment, he shall be liable to the person whose personal property was so taken for twice the value thereof in certain circumstances, as formerly.

In construing this statute, as in all other instances of statutory construction, we are called upon to ascertain the intention of the legislature and to give effect to such intention. The statute is in derogation of the common law and, therefore, must be understood as effecting no change in that law beyond what is clearly indicated in express terms or by necessary implication. *Easton* v. *Fessenden,* 65 R. I. 259, 262. Furthermore, the term "guilty of larceny" is a technical

term met only in criminal law. These words of art are to be given a technical meaning unless it is clear that the legislature did not employ the words in such sense.

After serious reflection, it is our judgment that the legislature did not intend that a defendant could be found guilty of larceny in the first instance in a civil action under the statute and on a mere preponderance of the evidence. Since the legislature expressed its intention in technical words of the criminal law and did not in any way indicate that such words were to be understood in any different sense, we must conclude that it intended to confine itself in this particular to their meaning under the criminal law. The evident purpose of the change under consideration was to broaden the meaning of the term "convicted of larceny" in the original statute, so that now the plaintiff, in an action under the statute, may show that the defendant was "guilty of larceny" by proof of a conviction or of an *admission* of guilt in some criminal proceedings. Unless the defendant's guilt is established in such a manner, the plaintiff is not entitled to recover double damages. In the instant case there is no competent proof to satisfy the requirement of the statute as above construed.

For the reasons stated, defendant's exception to the decision of the trial justice is sustained, unless the plaintiff elects to accept simple damages in the total sum of $1449.49, in lieu of the amount of $2898.98, as fixed by the trial justice. In case the plaintiff makes such an election and, on or before June 21, 1944, files in the office of the clerk of the superior court a remittitur of all of the decision in excess of $1449.49, the superior court is directed to enter judgment on the decision as reduced by the remittitur; otherwise, the defendant is granted a new trial on all issues in the case.

*Tillinghast, Morrissey & Flynn, M. Walter Flynn, Jr., Robert J. Conley,* for plaintiff.

*Philip S. Knauer, Charles Z. Alexander,* for defendant.