Michael E. KELLY et al.

v.

Robert MARCANTONIO et al.

Daniel HEROUX et al.

v.

Robert CARPENTIER et al.

Nos. 94–727–Appeal, 95–39–Appeal.

Supreme Court of Rhode Island.

July 11, 1996.

John A. MacFadyen; Susan E. McGuirl, Providence; Lise M. Iwon, Wakefield, R. Daniel Prentiss, Providence, Richard A. Cappalli, Woodsocket; Carl P. DeLuca, Providence; Mitchell S. Riffkin, Warwick; Paul P. Baillargeon, North Smithfield, Arlene Violet, East Providence, and Denis L. Ventriglia, Wilmington, N.C., for Plaintiff.

James T. Murphy; Thomas R. Bender; William T. Murphy, Robert J. Quigley, Jr., James P. Marusak, Raymond A. LaFazia, James J. McKenna, Providence, for Defendant.

Carolyn A. Mannis, Providence, Thomas A. Pavlinic, for Amicus Curiae.

## OPINION

BOURCIER, Justice.

This matter comes before us by submission of three certified questions from the Honor-

able Ernest J. Torres, a judge of the United States District Court for the District of Rhode Island, and four certified questions from the Honorable Richard J. Israel of the Rhode Island Superior Court.[1] The request is made by the United States District Court pursuant to Rule 6 of the Supreme Court Rules of Appellate Procedure. The request made by the Superior Court is pursuant to G.L.1956 § 9–24–27.

There is litigation now pending in both the United States District Court for the District of Rhode Island and the Rhode Island Superior Court arising out of the alleged sexual molestation of minors by priests of the Catholic Church. In addition to the claims made against the priest-perpetrators, the victims of the molestation also assert claims sounding in negligence and vicarious liability against various Church-employers of the accused priest-perpetrators, the Roman Catholic Bishop of Providence and other nonperpetrator-agents of the Diocese of Providence.[2] As a result of these claims, the following four questions have been certified to the justices of this court for our opinion:

1. "Is the time within which a claim must be brought for injury resulting from sexual abuse of a minor governed by R.I.Gen. Laws § 9–1–51 or R.I.Gen.Laws § 9–1–14(b) when the claim is asserted against someone *other than* the alleged abuser?"

2. "If § 9–1–14(b) governs, does the claimant's cause of action accrue

   (a) at the time the abuse occurs; or,

   (b) at the time the resulting injury first manifests itself; or,

   (c) at the time the victim becomes aware or reasonably should have become aware that he was abused, or

   (d) at the time the victim becomes aware or reasonably should have become aware that the injury was caused by the abuse, or

   (e) at some other time."

3. "Does the inability to recall incidents of sexual abuse constitute a disability that

extends the time within which claims for resulting injury may be brought pursuant to the provisions of § 9–1–19 or otherwise?"

4. "Assuming that § 9–1–51, and not § 9–1–14(b), is pertinent to any claim alleged by any plaintiff, may § 9–1–51 extend or enlarge any limitation period applicable to that claim, as to which an otherwise applicable limitation period had already run prior to the effective date of § 9–1–51, without violating the Constitution of the United States or the Constitution of the State of Rhode Island?"

## I

### Is the Time within Which a Claim for Injury Resulting from Sexual Abuse of a Minor Governed by § 9–1–51 or § 9–1–14(b) When the Claim Is Asserted against Someone Other Than the Alleged Abuser?

■ The first certified question presented to this court asks us to determine whether claims for injuries resulting from the sexual abuse of a minor are governed by G.L.1956 § 9–1–51, as amended by P.L.1993, ch. 274, § 1 or G.L.1956 § 9–1–14(b) when those claims are asserted against someone other than the alleged abuser.

■ Section 9–1–51 reads in pertinent part as follows:

"(a) All claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within seven (7) years of the act alleged to have caused the injury or condition, or seven (7) years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by said act, whichever period expires later.

"(b) The victim need not establish which act in a series of continuing sexual abuse

---

1. The first three questions from the Superior Court are identical to the questions submitted by the United States District Court.

2. When reference is made to perpetrator and nonperpetrator-defendants in this opinion, we do so only to distinguish defendant status and we imply no finding of participation or nonparticipation in the acts alleged.

or exploitation incidents cause the injury complained of, but may compute the date of discovery from the date of the last act *by the same perpetrator* which is part of a common scheme or plan of sexual abuse or exploitation.

" * * *

"(e) As used in this section, 'childhood sexual abuse' means any act committed by *the defendant* against a complainant who was less than eighteen (18) years of age at the time of the act and which act would have been a criminal violation of chapter 37 of title 11." (Emphasis added.)

The General Assembly did not specifically include in § 9–1–51 a cause of action against nonperpetrator-defendants. Although it did not explicitly limit the statute's application only to perpetrator-defendants, the language used by the General Assembly permits no other interpretation. When the General Assembly defines a word or a phrase used in its enactment, that definition is binding upon this court. *Ayers–Schaffner v. Solomon,* 461 A.2d 396, 399 (R.I.1983); *Town of Scituate v. O'Rourke,* 103 R.I. 499, 512, 239 A.2d 176, 184 (1968); *Broadway Auto Sales, Inc. v. Asselin,* 93 R.I. 403, 406, 176 A.2d 714, 716 (1961). When one reads the definition contained in § 9–1–51(e) together with the main body of that statute, the rule that emerges is that all actions brought pursuant to § 9–1–51 must be based on the intentional conduct of *"the"* defendant-perpetrator.

Subsection (e) of § 9–1–51, in which the General Assembly *defines* "childhood sexual abuse," reads,

"As used in this section, 'childhood sexual abuse' means any act committed by the defendant against a complainant who was less than eighteen (18) years of age at the time of the act and which act would have been a criminal violation of chapter 37 of title 11."

Thus, the only intended target of the legislation is the person who at the time of the abuse would have been subject to criminal prosecution pursuant to chapter 37 of title 11 of our General Laws. That person under our law can only be the person who actually commits the criminal sexual act, namely, the perpetrator, and not his or her employer or supervisor, unless that employer or supervisor actually aids and assists in the commission of the criminal act to the degree that he or she would be subject to prosecution under chapter 37 of title 11 as a principal. The statute's definition of "childhood sexual abuse" dictates that only violators of chapter 37 of title 11, actual perpetrators, can be defendants under § 9–1–51 because by using "the" as opposed to "a" when referencing defendants, the Legislature limited the class of potential defendants subject to § 9–1–51. *See, e.g., Doe v. Roman Catholic Diocese of Jefferson City,* 862 S.W.2d 338, 340 (Mo. 1993). That strict interpretation of the General Assembly's language is consistent with our mandate to strictly construe such legislation as the § 9–1–51 discovery rule that is in derogation of the common law. *In re John,* 605 A.2d 486, 488 (R.I.1992). At common law there was no discovery rule. Our interpretation of § 9–1–51 we find consistent with interpretations of similar statutes by other state courts.

In *Debbie Reynolds Professional Rehearsal Studios v. Superior Court,* 25 Cal.App.4th 222, 30 Cal.Rptr.2d 514 (1994), the statute at issue provided that:

"(a) In any civil action for recovery of damages suffered as a result of childhood sexual abuse, the time for commencement of the action shall be within eight years of the date the plaintiff attains the age of majority or within three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse, whichever occurs later.

(b) 'Childhood sexual abuse' as used in this section includes any act committed by *the defendant* against the plaintiff which act occurred when the plaintiff was under the age of 18 years and which act would have been proscribed by [the applicable California penal code section] * * *." 25 Cal.App.4th at 230, 30 Cal.Rptr.2d at 518. (Emphasis added.)

The California court interpreted that statute as applying only to actions against perpetrators, explaining that

"[t]he obvious goal of amended section 340.1 is to allow sexual abuse victims a longer time period in which to become aware of their psychological injuries and remain eligible to bring suit against their abusers. Nothing contained within the Legislative history suggests that section 340.1 was intended to apply to 'related, ancillary' causes of action such as those asserted against petitioner." 25 Cal. App.4th at 232–33, 30 Cal.Rptr.2d at 520.

The court further noted that to interpret the statute as applying to claims made against nonperpetrator-defendants would be to "assume that our Legislature chose a surprisingly indirect route to convey an important and easily expressed message." *Id.* at 232, 30 Cal.Rptr.2d at 519. The California court declined to adopt that strained interpretation. We do likewise.

Section 9–1–51 of our General Laws is similar in all material respects to the California statute reviewed in *Debbie Reynolds.* The only difference between the statutes is that the California statute does not limit actions to those "based on intentional conduct" as does the Rhode Island statute. That difference, if relevant at all to this court's response to the certified question, supports the reading of our statute as applying only to the actual perpetrators because our statute is worded more strictly than the California statute. *See also Hawley v. Kenley,* 261 Ill.App.3d 307, 199 Ill.Dec. 420, 634 N.E.2d 20 (1994).

■ We note additionally in support of the conclusion previously made that when § 9–1–51 was originally enacted, it contained the general three year statute of limitation provision applicable to civil injury to the person causes of action. However, in order to grant broad relief opportunity to childhood sexual abuse victims, the cause of action created by the General Assembly in § 9–1–51 provided not only for a discovery of injury rule to trigger the action's limitation period but also provided for computing that period of limitation, if the *"perpetrator's"* actions had been part of an ongoing activity, from the date of the last act by the *"same perpetrator."* In so designating an intended defendant as "perpetrator" in § 9–1–51(b) actions, we reason therefrom that the General Assembly's statutory intention and language is both clear and unambiguous. We must accord that statutory language its plain and ordinary meaning. *Bottiglieri v. Caldarone,* 486 A.2d 1085, 1087 (R.I.1985). Once having done that, our "work of judicial interpretation is at an end." *DeAngelis v. Rhode Island Ethics Commission,* 656 A.2d 967, 969 (R.I.1995); *State v. Mollicone,* 654 A.2d 311, 317 (R.I.1995).

Accordingly, § 9–1–51 has no application to claims made against nonperpetrator-defendants. In regard to nonperpetrator-defendants, the three-year statute of limitation provided in § 9–1–14(b) applies, subject of course to the tolling provision of § 9–1–19, as amended by P.L.1988, ch. 107, § 1.[3]

## II

### When Does a Plaintiff's Cause of Action under § 9–1–14(b) Accrue?

■ Having previously concluded that § 9–1–51 has no application to nonperpetrator-defendants, we next address the question of when does a cause of action accrue against a nonperpetrator-defendant pursuant to § 9–1–14(b). Sexual assault of a child is essentially a common law battery. *Silveira v. Santos,* 490 A.2d 969, 973 (R.I.1985). We conclude therefrom that as far as nonperpetrators are concerned, the statute of limitations for such actions begins to run at the time the injury occurs, pursuant to the common law rule, unless some disability tolls the statute as provided in § 9–1–19.[4]

---

3. In the context of the claims made against the nonperpetrator-defendants, we note incidentally the possibility of First Amendment to the United States Constitution considerations. *See, e.g., Pritzlaff v. Archdiocese of Milwaukee,* 194 Wis.2d 302, 533 N.W.2d 780 (1995).

4. We note also that in any cause of action pending on June 17, 1992, or filed thereafter and not previously time-barred, if the sexual abuse or exploitation alleged against a perpetrator was in the nature of a series of acts of continued sexual abuse or exploitation and was part of a common scheme or plan, the date of the last act by the same perpetrator would trigger the commencement of the period of limitations. G.L.1956 § 9–1–51(b).

■ Under the common law, the general rule is that a cause of action accrues and "the statute-of-limitations clock starts ticking at the time that an injury occurs." *Soares v. Ann & Hope of Rhode Island, Inc.*, 637 A.2d 339, 352–53 (R.I.1994). The balance of equities favors that accrual rule with regard to actions against nonperpetrator-defendants for damages arising from childhood sexual abuse. As the court in *Debbie Reynolds* said:

> "Our Legislature, aware it was limiting the scope of the statute [making the discovery rule applicable to childhood-sexual-abuse claims against nonperpetrators], recognized that it is the *perpetrator* of the abuse who is responsible for instilling the psychological defense mechanism leading to repression. It is this aspect of the repression phenomenon that our Legislature found deserving of special attention and caused it to enact a delayed discovery statute of limitations *directed specifically at the perpetrator* of the sexual abuse." (Emphasis added.) *Debbie Reynolds*, 25 Cal. App.4th at 233, 30 Cal.Rptr.2d at 520.

We perceive of no persuasive policy considerations that the General Assembly failed to consider when enacting § 9–1–51 that would support judicial application of a discovery rule to claims made against nonperpetrator-defendants. If a plaintiff seeks to toll the running of § 9–1–14(b) in a sexual molestation action asserted against a nonperpetrator, he or she must do so pursuant to § 9–1–19, as set forth in section III of this opinion. Our conclusion is consistent with this court's balancing of equitable policies set out in *Anthony v. Abbott Laboratories*, 490 A.2d 43 (R.I.1985).

In *Anthony* this court applied the discovery rule to drug-product liability actions. In *Anthony* we believed that after weighing "the policy of eliminating the unexpected enforcement of stale claims with the opportunity of a person to have his or her day in court to vindicate those rights that have been violated but have remained undiscovered or undiscoverable," the equities in that case favored the application of the discovery rule to product liability cases. *Id.* at 46–47. A cogent dissent warned, however, that "the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Id.* at 49 (Weisberger, J. dissenting). Prior to the General Assembly's enactment of a discovery rule applicable to perpetrator-defendants in childhood sexual abuse cases, we specifically hesitated to judicially integrate a discovery rule into those cases. *Doe v. LaBrosse*, 588 A.2d 605, 606–607 (R.I.1991). For us now to expand, judicially, the discovery rule to *nonperpetrator-defendants* in childhood sexual abuse cases would catapult us into the category of cases about which the dissent in *Anthony* cautioned. Conceding that enforcement of claims against *perpetrator-defendants* could be justified because those defendants would be the persons directly responsible for any alleged repressed memories, neither that policy reason, nor any other policy concerns, are strong enough to support judicial application of the discovery rule to actions against nonperpetrator-defendants. We acknowledge that the General Assembly considered the right of a nonperpetrator-defendant to be free of stale claims to be as great as the right of a plaintiff to prosecute a childhood sexual abuse claim, and we decline to judicially upset that balance set by the General Assembly. *See, e.g., Maine Medical Center v. Cote*, 577 A.2d 1173, 1176 (Me.1990).

Justice Lederberg while concurring with the majority's conclusion concerning the applicability of § 9–1–19 to claims made against nonperpetrator-defendants urges that we judicially write into § 9–1–14(b) a discovery rule as found in the specific legislative language of § 9–1–51.[5] That position does not give full weight to the nature and extent of the action tolling features contained in § 9–1–19 and which would apply to § 9–1–14(b) actions involving nonperpetrator-defendants. A careful reading of § 9–1–19 reveals that it actually affords to plaintiffs in nonperpetrator actions all that Justice Lederberg's opinion suggests. The General Assembly when it enacted § 9–1–51 in 1992 (P.L.1992, ch. 84,

---

5. Justice Lederberg cites article 1, section 5 of the Rhode Island Constitution. The logical extension of her position would be to ignore or judicially repeal all statutes of limitations and give true meaning to a person's right to recourse to the laws for all injuries or wrongs received.

§ 1) and when amending that statute in 1993 (P.L.1993, ch. 274, § 1) is presumed to have known that it limited the discovery rule provided therein to only those claims of alleged sexual abuse made against the actual perpetrators of the abuse. *Sorenson v. Colibri Corp.*, 650 A.2d 125, 132 (R.I.1994). In that light, we decline to now craft into § 9–1–14(b) a special discovery rule that would stand in clear contradiction to our long established rule of statutory construction applicable to a legislative act that is clear and unambiguous. *DeAngelis*, 656 A.2d at 969.

Accordingly, our answer to certified question No. 2 is that in actions against nonperpetrator-defendants for damages resulting from childhood sexual abuse, the period of limitation, under § 9–1–14(b), commences to accrue at the time the injury occurs, subject to the tolling provision of § 9–1–19.

## III

**Does the Inability to Recall Incidents of Sexual Abuse Constitute a Disability That Would Extend the Time within Which Claims for Resulting Injury May be Brought Pursuant to § 9–1–19?**

■ The third question, succinctly put, asks whether repressed recollection of past sexual abuse could qualify as a tolling feature encompassed within the "unsound mind" factor in § 9–1–19. We respond initially in the affirmative. The final determination of that question, however, actually rests with the trial justice who, in the first instance, must determine, after pretrial hearing or at trial, whether repressed recollection is included within the tolling condition of "unsound mind" in a particular case. That is a question of law determination to be made by the trial justice. A trial justice, after hearing and considering expert medical and scientific evidence and opinion will, in the first instance, be in the best position to decide as a matter of law whether the alleged repressed recollection in a particular case is sufficiently relevant, reliable, and scientifically and/or medically established so as to constitute "unsound mind," thereby tolling the action limitation period.[6] We recognize that the theory or principle of repressed recollection is one that figures prominently in legal, scientific, and medical debate. In all those disciplines, we note advocates and dissenters, believers and nonbelievers.[7]

■ Because the trial justice's finding will involve examination and review of the

6. General Laws 1956 § 43–3–7 pertaining to rules of statutory construction and interpretation defines "Insane person" as including "every idiot, person of unsound mind, lunatic, and distracted person." Thus a finding of unsound mind is similar to a finding of insanity which is also made by the trial justice in the first instance after hearing or at trial.

7. *See, e.g.,* Diagnostic and Statistical Manual of Mental Disorders, *Diagnostic Categories*, § 309.81 (3rd ed. 1980); Diagnostic and Statistical Manual of Mental Disorders, *Posttraumatic Stress Disorder*, § 309.89 (3d rev. ed. 1987); Diagnostic and Statistical Manual of Mental Disorders, *Posttraumatic Stress Disorder*, § 309.81 (4th ed. 1994); Elizabeth F. Loftus and Katherine Ketcham, *The Myth of Repressed Memory: False Memories and Allegations of Sexual Abuse* (1994); Richard Ofshe and Ethan Watters, *Making Monsters: False Memories, Psychotherapy, and Sexual Hysteria* (1994); Mark Pendergrast, *Victims of Memory: Incest Accusations and Shattered Lives* (1995); Gary M. Ernsdorff and Elizabeth F. Loftus, *Let Sleeping Memories Lie? Words of Caution About Tolling the Statute of Limitations in Cases of Memory Repression*, 84 J.Crim.L. & Criminology, 129 (1993); Ralph Slovenko, *The "Revival of Memory" of Childhood Sexual Abuse: Is the Tolling of the Statute of Limitations Justified?*, J.Psych. & L. 7 (Spr. 1993); Paula L. Boland and Sherry A. Quirk, *Repressed Memories*, ABA Journal, 42 (Sept. 1994); Elizabeth F. Loftus, *The Reality of Repressed Memories*, 48 American Psychologist 518 (May 1993); Elizabeth F. Loftus and Laura A. Rosenwald, *Shattered Lives*, ABA Journal, 70 (Nov. 1993); Harrison G. Pope, Jr. and James I. Hudson, *Can Memories of Childhood Sexual Abuse Be Repressed*, 25 Psychological Medicine, 121 (1995); Jeffrey G. Schneider, Esq., *Legal Issues Involving "Repressed Memory" of Childhood Sexual Abuse*, 5 The Psychologist's Legal Update (Judy E. Hall, Ph.D, ed., Aug. 1994); Robert I. Simon, M.D., *True or False Memories of Sexual Abuse? A Forensic Psychiatric View*, 23 Psychiatric Annals, 527 (Sept. 1993); *Victims, Courts, Academics Debate Truth of Recovered Memories in Abuse Cases*, Trial 12 (May 1994); Louis E. Gelineau, *How We're Dealing with Abuse*, Providence Journal–Bulletin, Aug. 11, 1994, at A15; *Divided Memories, Part I—The Hunt for Memory*, (Frontline, Apr. 4, 1995). *See also* Sarno, *Emotional or Psychological "Blocking" or Repression as Tolling Running of Statute of Limitations*, 11 A.L.R.5th 588 (1993).

entire scientific theory of repressed recollection and the scientific method through which such recollections are recovered, the trial justice should consider expert testimony and evidence in making that determination. *See Corning Glass Works v. Seaboard Surety Co.*, 112 R.I. 241, 308 A.2d 813 (1973); R.I.R.Evid. 702. When considering that expert testimony and evidence, the trial justice will be required to determine whether the testimony and evidence is relevant, whether the expert is qualified to testify on the subject matter, and whether the proffered expert opinion is of substantial probative value to the factfinder. *State v. Wheeler*, 496 A.2d 1382, 1388 (R.I.1985).

After undertaking those considerations, the trial justice might then be in a position to decide that repressed recollection constitutes a scientifically accepted and valid theory and that upon the facts of the specific case, the repressed recollections alleged do in fact collectively qualify as an unsound mind disability under § 9–1–19. The trial justice may also decide that repressed recollection although constituting a scientifically accepted and valid theory, does not in and of itself qualify as a tolling feature under § 9–1–19. The trial justice, after hearing, may also decide that the theory of repressed recollection lacks required accepted scientific validity and therefore would not constitute relevant probative evidence that could support a finding of unsound mind. In that event, the tolling provisions of § 9–1–19 pertaining to unsound mind would not apply. A fourth alternative is that the trial justice might find that the theory of repressed recollection is scientifically valid, but that a particular plaintiff has failed to prove sufficient facts establishing the existence of repressed recollections in his or her particular case. Thus, in that alternative situation, no unsound mind disability would be found to exist, and the statute of limitations would not be tolled.

Regardless of which of the above possible options is ultimately found by the particular trial justice to apply in any of the consolidated cases before us, this court is not the proper forum for making the requested determination in the first instance. Accordingly, we leave that determination to the trial justices. If a trial justice, in a particular case determines that the evidence of repressed recollection is sufficiently valid and reliable under the standard expressed in *Wheeler* and that the particular evidence establishes the existence of unsound mind, then the particular claim alleging damages arising from the childhood sexual abuse concerned would not be time-barred by the statute of limitations until three years after the unsound mind disability ends and the repressed recollections are recovered, pursuant to § 9–1–19.

## IV

**Is Application of § 9–1–51 to a Cause of Action Already Time–Barred by an Existing Statute of Limitations Prior to the Effective Date of § 9–1–51 Constitutional?**

■ The fourth certified question requests us to determine whether, under both the Federal and the State Constitutions, it is constitutionally permissible for our General Assembly to revive a previously time-barred cause of action by application of § 9–1–51 to that cause of action.

We have previously determined that § 9–1–14(b) is applicable to the claims made against nonperpetrator-defendants and that § 9–1–51 has application only to the claims made against perpetrator-defendants. Accordingly, our response to the instant question pertains only to those plaintiffs' claims made against perpetrator-defendants pursuant to § 9–1–51.

At common law, rape and carnal knowledge crimes were felonies. Rollin M. Perkins & Ronald N. Boyce, *Criminal Law*, § 5 at 197–200 (3d ed. 1982). Sodomy and the various abominable and detestable crimes against nature, sometimes referred to as deviant sexual conduct crimes, were likewise all felonies. In regard to the latter, Blackstone wrote of them that "the very mention of which is a disgrace to human nature * * * [and] in this respect the delicacy of our English law * * * in its very indictments, as a crime not fit to be named; *'peccatum illud horrible, inter christianos non nominandum.'* " 4 Blackstone, *Commentaries on the*

*Laws of England,* ch. 15 at 215–16 (U.Chi. Press 1979). *See also* 9 *Halsbury's Laws of England* Part XI, § 672–676 at 397–99 (2nd ed. Hailshom 1933).

At common law there was no civil action that could be maintained for an injury caused by the commission of any of those felonies "until after a trial of the defendant for the felonious act, and after his conviction or acquittal." *Struthers v. Peckham,* 22 R.I. 8, 11, 45 A. 742, 743 (1900). The reason for that rule was both clear and mercenary. At that time, the estate of a convicted felon was forfeited to the crown, and "the king's prerogative should not be infringed by means of a civil action." *Id. See also Anthony v. Clarke,* 1 R.I. 284 (1850). That common law rule persisted in this state until at least 1896, when the General Assembly modified the rule by permitting a civil action for damages incurred as the result of another's criminal act to be commenced after a criminal complaint and process thereon had been issued against the wrongdoer defendant. G.L. 1896 ch. 233, sec. 16. A civil action no longer was barred until after the felon was convicted and after his goods forfeited to the king. Thereafter, a criminally-wronged plaintiff might hope to be able to get to the felon's assets before the king. *DaCosta v. Rose,* 70 R.I. 163, 167, 37 A.2d 794, 796 (1944). This court noted in *DaCosta* that the statute authorizing a civil action for a criminal act was "an enabling act giving a right of action where none existed at common law." *Id.* We follow and trace the legislative footprints of that enabling 1896 statute into G.L.1923, ch. 333, and again, intact, into G.L.1938 ch. 478, and finally, into G.L.1956 § 9–1–2.

The plaintiffs in the various cases from which this certified question emanates had available to them, pursuant to § 9–1–2, causes of action for the damages they claim against the alleged perpetrators. Those causes of action would have been subject to the general three-year period of limitation provided for injury to the person actions in § 9–1–14(b). *Lyons v. Town of Scituate,* 554 A.2d 1034, 1036 (R.I.1989). The statute of limitation for a § 9–1–14(b) action would have commenced when the injury occurred unless tolled by § 9–1–19. *See supra,* sections II and III. The General Assembly, however, by virtue of P.L.1992, ch. 84, provided another alternative claim of relief to the plaintiffs and others similarly situated by creating a new and special cause of action for victims of childhood sexual abuse and exploitation. That public law transposes into § 9–1–51. As originally enacted in 1992, it retained the general three-year period of action limitation applicable to all injury to person claims. However, the act also created and introduced as an exception to the general three-year action limitation prescription a discovery-of-injury rule that effectively permitted, in certain situations, commencement of a § 9–1–51 action long after expiration of the general § 9–1–14(b) personal injury three year action cut-off date. Under § 9–1–51 as enacted in 1992, a plaintiff's time within which to commence his or her action would be triggered from the time that the plaintiff's injury or condition complained of was first discovered or reasonably should have been discovered and not when the injury first occurred. We point out also that subsection (b) in § 9–1–51 additionally permits a particular plaintiff to commence computing his or her cause of action time limitation period from the "date of the last act by the same perpetrator which is part of a common scheme or plan of sexual abuse or exploitation." Those discovery features are unique to childhood sexual abuse claims in this state.[8]

The General Assembly at its 1993 session once again addressed the subject matter of the period of action limitation in § 9–1–51 sexual abuse claims and enacted P.L.1993, ch. 274. That legislation amended P.L.1992, ch. 84, by enlarging the action limitation period from three years to seven years. In

---

8. Prior to enactment of § 9–1–51, this court had reserved decision on whether to permit utilization of a discovery rule in a sexual abuse civil damage claim in order to overcome a three-year statute of limitation challenge. *Doe v. LaBrosse,* 588 A.2d 605, 607 (R.I.1991). It might reasonably be inferred that our reservation expressed in

*Doe* in March 1991 served in some small measure to prompt enactment of a discovery rule at the following General Assembly session. P.L. 1992, ch. 84 (§ 9–1–51). That 1992 legislation resolved our earlier hesitation and reservation concerning adoption of a discovery rule in such cases. *Doe v. LaBrosse,* 625 A.2d 222 (R.I.1993).

all other respects, the 1992 legislation remained as originally enacted and remains so at this time. It is significant to note that the 1993 legislation enlarging the limitation of action period took effect upon passage, namely, July 26, 1993. Accordingly, its effect on litigants would of course be governed by the statutory construction rule mandated in G.L. 1956 § 43–3–22 and would be applicable only to those causes of action accruing within the newly enlarged limitation period, and not to any causes of actions previously time-barred as of July 25, 1993. *See, e.g., Spunt v. Oak Hill Nursing Home, Inc.,* 509 A.2d 463 (R.I. 1986); *Continental Southern Lines, Inc. v. Hilland,* 528 S.W.2d 828 (Tex.1975); Annotation, *Limitation–Enlarging Period,* 79 A.L.R.2d 1080, 1098 (1961). Because of the 1986 amendment to art. 1, sec. 2, of the Rhode Island Constitution, retroactive application of the original three-year or enlarged seven-year limitation period so as to revive a previously time-barred action could conceivably invoke both due process and equal protection considerations. *See, e.g., Kleczek v. Rhode Island Interscholastic League, Inc.,* 612 A.2d 734 (R.I.1992). *Cf. Twomey v. Carlton House of Providence,* 113 R.I. 264, 320 A.2d 98 (1974) (court declined to find constitutional restraint on the Legislature's right to restore a remedy barred by the passage of time because the State Constitution contained a due process clause applicable only to criminal prosecutions).

Prior to the 1986 amendment to art. 1, sec. 2, the Rhode Island Constitution contained only a criminal due process provision, R.I. Const. art. I, sec. 10, and did not contain a due process clause applicable to civil actions. Without a controlling due process clause, Rhode Island decisions that considered the constitutionality of reviving time-barred claims through retroactive application of statutes of limitation found no federal or state constitutional prohibition. *See Dandeneau v. Board of Governors for Higher Education,* 491 A.2d 1011, 1012 (R.I.1985); *Spagnoulo v. Bisceglio,* 473 A.2d 285, 289 (R.I.1984); *Twomey,* 113 R.I. at 271, 320 A.2d at 102. In finding no state constitutional bar, those cases expressly relied upon the absence of a due process clause in the Rhode Island Constitution. In finding no federal constitutional

bar, *Twomey* and *Spagnoulo* specifically relied upon the general federal rule emanating from *William Danzer & Co. v. Gulf & Ship Island Railroad Co.,* 268 U.S. 633, 45 S.Ct. 612, 69 L.Ed. 1126 (1925); *Campbell v. Holt,* 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885); and *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628, *reh'g denied,* 325 U.S. 896, 65 S.Ct. 1561, 89 L.Ed. 2006 (1945), in support of their holdings that general statutes of limitation that are procedural in nature affect only remedies, and not rights, and as a result there would be no per se due process violation caused by enactment of a statute reviving an already time-barred claim. *Dandeneau* did not attempt a federal constitutional analysis.

In *Campbell* the Supreme Court held that a potential defendant gained no vested right in the expiration of a statute of limitation, and a legislative act reviving an already time-barred action did not generally constitute a taking of property under due process analysis. Later in 1925 the Supreme Court in *Danzer* distinguished *Campbell,* holding that where a legislative act creates a cause of action unknown to the common law and the action limitation period therein constitutes a part of the newly created action, it is a substantive limitation on liability rather than on just the remedy. In that case, the revival by legislative act of a time-barred action served to revive a liability rather than a remedy and violated due process principles. *Tillinghast v. Reed,* 70 R.I. 259, 38 A.2d 782 (1944), mirrored *Danzer* in holding that "where a statute creates an entirely new right of action that did not exist at common law and expressly attaches thereto, without any exception, a proviso that the action shall be brought within a specified time, such proviso ordinarily will be construed as a condition imposed upon the created right of action and not merely as a statute of limitation affecting the remedy only." 70 R.I. at 263, 38 A.2d at 783. *See, e.g., Santelle et al. v. Miriam Hospital,* 122 R.I. 920, 414 A.2d 191 (1980); *Short v. Flynn,* 118 R.I. 441, 374 A.2d 787 (1977). *Chase* acknowledged with approval the holdings in both *Campbell* and *Danzer.* In the federal courts, *Danzer,*

*Campbell,* and *Chase* produced the general rule that we acknowledged in *Twomey* and *Spagnoulo.*

We are not unmindful that *Campbell, Danzer,* and *Chase* remain the foundation stones for the current general federal rule. The state appellate courts, however, are free to interpret and to construe their own state constitutional due process and equal protection provisions. In so doing, the "great preponderance" of state appellate courts do not apply or follow the general federal rule. *State of Minnesota ex rel. Hove v. Doese,* 501 N.W.2d 366, 369–70 (S.D.1993). *See also Johnson v. Lilly,* 308 Ark. 201, 823 S.W.2d 883 (1992); *Doe v. Roman Catholic Diocese of Jefferson City,* 862 S.W.2d 338 (Mo.1993); *Ford Motor Company v. Moulton,* 511 S.W.2d 690 (Tenn.), *cert. denied,* 419 U.S. 870, 95 S.Ct. 129, 42 L.Ed.2d 109 (1974); *Starnes v. Cayouette,* 244 Va. 202, 419 S.E.2d 669 (1992); 51 Am.Jur.2d *Limitation of Actions,* § 44 (1970).

The issue presented to us in this certified question is now essentially one of first impression. This court has not had the opportunity to reexamine the constitutionality of legislation reviving time-barred claims through the retroactive application of limitation provisions since the 1986 inclusion of a civil due process clause in the Rhode Island Constitution. R.I. Const. art. I, sec. 2. *Twomey,* however, serves as a suitable vedette and gives indication of how we should rule today.

In *Twomey,* we discussed at length the United States Supreme Court's decision in *Campbell.* We noted in *Twomey* that we were "not faced * * * with a statute which both creates a new right unknown to the common law and puts a period to that right's existence," as was the factual predicate in *Danzer. Twomey,* 113 R.I. at 269 n. 5, 320 A.2d at 101 n. 5. We said, however, that we found Justice Bradley's dissent in *Campbell* to be most persuasive when he reasoned that

"an immunity from prosecution in a suit, whether by reason of a statutory bar or otherwise, is as valuable a right to one party as the right to prosecute that suit is to the other; that therefore the opportunity to defend on statute of limitations

grounds is a vested right protected against legislative deprivation by due process concepts; and that even if that opportunity is not deemed a vested right, but only a remedy, it is no less entitled to constitutional protection." *Id.* at 270, 320 A.2d at 101.

We noted at that time also that Justice Bradley's views reflected the appellate court holdings in practically all those states having civil due process provisions in their respective State Constitutions. We then stated,

"We too, would be inclined to follow his approach were it not that our due process clause—art. I, sec. 10, of the state constitution—applies only to the rights of persons accused in criminal prosecutions and not in civil cases." *Id.* at 271, 320 A.2d at 101.

The 1986 art. 1, sec. 2, constitutional amendment inclusion into our state constitution of a due process clause applicable to civil cases prods the inclination we expressed in *Twomey* in 1974.

Although it is permissible for the General Assembly to enlarge an already existing action limitation period that would be applicable to causes of action thereunder not already time-barred without offending any vested substantive right of the parties, the amendment to art. 1, sec. 2, precludes legislation with retroactive features permitting revival of an already time-barred action that would impinge upon a defendant's vested and substantive rights and would offend a defendant's art. 1, sec. 2, due process protections. *Twomey v. Carlton House of Providence,* 113 R.I. 264, 320 A.2d 98 (1974). *Sutherland Stat. Const.* § 41.09 (5th ed. 1993); Annotation *Limitations–Enlarging Period,* 79 A.L.R.2d 1080, 1098 (1961).

## V

### Conclusion

In answer to the certified questions, this court respectfully responds that (1) § 9–1–14(b) and not § 9–1–51 applies to claims asserted against nonperpetrator-defendants for damages arising from childhood sexual abuse; (2) the cause of action for such claims accrues at the time the injury occurs; (3)

repressed recollection could qualify as a disability pursuant to § 9–1–19 if the trial justice determines that the evidence is sufficiently reliable, under *Wheeler,* to qualify as unsound mind, and the evidence establishes the existence of repressed recollections; and (4) art. 1, sec. 2, in our State Constitution bars the retroactive application of § 9–1–51 to claims already time-barred by a statute of limitations in effect prior to the effective date of § 9–1–51.

FLANDERS, J., did not participate.

LEDERBERG, Justice, concurring in part and dissenting in part.

Article 1, Section 5, of the Rhode Island Constitution provides that "Every person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which may be received in one's person." The right to seek legal remedy of an injury is of course restricted by statutes of limitations that are intended to "prevent the unexpected enforcement of stale claims concerning which persons interested have been thrown off their guard for want of seasonable prosecution." *Wilkinson v. Harrington,* 104 R.I. 224, 236, 243 A.2d 745, 752 (R.I.1968). This Court has long recognized, however, that this purpose is not defeated by providing a "reasonable opportunity to become cognizant of an injury and its cause before the statute of limitations begins to run" and that "in certain cases and circumstances in the past, [this Court has] rejected the general rule that a cause of action accrues at the time of the injury." *Anthony v. Abbott Laboratories,* 490 A.2d 43, 45 (R.I. 1985).

In *Wilkinson,* this Court adopted the discovery rule for medical-malpractice claims, reasoning that

"[t]o construe the statute [of limitations] narrowly so as to preclude a person from obtaining a remedy simply because the wrong of which he was the victim did not manifest itself for at least two years from the time of the negligent conduct, is clearly inconsistent with the concept of fundamen-

tal justice. To require a man to seek a remedy before he knows of his rights, is palpably unjust." [9] 104 R.I. at 238, 243 A.2d at 753.

Because injuries resulting from medical malpractice may go undetected for some time, this Court concluded that it would "prefer to follow the discovery rule in medical malpractice cases because in our opinion the theory behind it is eminently fair and perfectly consistent with the function and nature of limitation acts." *Id.* at 239, 243 A.2d at 753.

The discovery rule was subsequently applied to a product-liability claim in *Anthony,* when this Court weighed "the policy of eliminating the unexpected enforcement of stale claims with the opportunity of a person to have her day in court to vindicate those rights that have been violated but have remained undiscovered." 490 A.2d at 46. The *Anthony* court determined that the defendant drug companies would not be unduly prejudiced by application of the discovery rule because

"[i]t should be foreseeable to the drug companies that if they put a product on the market that has harmful consequences, its effects will take some time to manifest themselves. They should also be aware that there may be an additional period of time before the injured person learns that her injury was the result of wrongful conduct on the part of the manufacturer." *Id.* at 47.

This Court concluded that public policy would be served by application of the discovery rule, because it would "encourage manufacturers to be more thorough in their testing before a product is placed on the market." *Id.* at 48.

It is clear that if a child victim of sexual abuse alleges repressed recollection of the abuse, and the trial justice finds the repressed-recollection allegation to be valid, the tolling provisions, if applicable, of G.L. 1956 § 9–1–19 would trigger in against the nonperpetrator defendant. In such an event, the child victim's claim could be brought against the nonperpetrator within three years of the recall of sexual abuse and within

---

9. In 1971, the General Assembly increased the limitations period prescribed by G.L.1956 § 9–1– 14 from two years to three years. P.L.1971, ch. 200.

seven years against the actual perpetrator pursuant to § 9–1–51(a). Notwithstanding this tolling provision, however, our holdings in *Anthony* and in *Wilkinson* provide ample precedent for applying the discovery rule to certain nonperpetrator defendants. While a disability under § 9–1–19 would likely address the circumstances of most cases, I would apply the discovery rule to § 9–1–14(b) without the necessity of invoking a disability. Moreover, if the requirements of § 9–1–14(b) are met in accordance with *State v. Wheeler*, 496 A.2d 1382 (R.I.1985), the distinction may not be apparent in a given case.

As one of the plaintiffs cogently argued:

"Pedophiles are notoriously difficult to deter. The institutions that employ them, however, are highly sensitive to questions of legal liability. These institutions are likely to do whatever will minimize their liability and insure their institutional survival."

According to plaintiffs, the nonperpetrator defendants were alleged to have been "directly and actively involved in [the perpetrators'] sexual predations" insofar as they "knew what was going on, yet * * * neglected to limit [the perpetrators'] authority over children" and, in some cases, "actively assigned [them] specifically to work with * * * youth, their knowledge notwithstanding," and repeatedly transferred the perpetrators to "hush up" scandals when they arose. Application of the discovery rule in such cases can help to deter institutional behavior in which concern for self-preservation outweighs concern for the children placed under the supervision or authority of institutions, whether in child-care, educational, religious, cultural, or social settings. Clearly, such deterrence constitutes a persuasive policy consideration that supports application of the discovery rule to suits against nonperpetrator defendants.

Given the common delay between sexual abuse and a victim's realization of its resulting injury, sound public policy would permit application of the discovery rule against nonperpetrator defendants. As a result, institutions entrusted with the care of children would be more likely to screen their employees and would act promptly to protect children in their custody at the time evidence of abuse is presented. There is no meaningful distinction between the institutional nonperpetrator defendants in the cases before us and hospitals that have been subject to liability under the discovery rule for medical malpractice committed by physicians in their employ. *See, e.g., Johnson v. St. Patrick's Hospital*, 148 Mont. 125, 417 P.2d 469 (1966) (discovery rule applied in malpractice action against doctor *and hospital*), *cited in Wilkinson*, 104 R.I. at 231, 234, 243 A.2d at 750, 751; *Brown v. Mary Hitchcock Memorial Hospital*, 117 N.H. 739, 378 A.2d 1138 (1977) (same).

Statutes of limitations are "predicated on the reasonable and fair presumption that valid claims which are of value are not usually left to gather dust or remain dormant for long periods of time." *Wilkinson*, 104 R.I. at 236, 243 A.2d at 752 (citing *Riddlesbarger v. Hartford Insurance Co.*, 74 U.S. (7 Wall.) 386, 19 L.Ed. 257 (1868)). In cases of childhood sexual abuse, in which resulting injury may go unrealized for many years, this "reasonable and fair presumption" is neither valid nor just. The General Assembly's incorporation of the discovery rule into § 9–1–51(a) evinces its clear recognition of the fact that the delay between early sexual abuse and the discovery of resulting harm should not be construed against the victims of such abuse. Victims of sexual abuse are entitled, under § 9–1–51(a), to bring an action against their abusers within seven years of *discovering* the resulting injuries. Clearly, those same victims should be entitled to discover their injuries before the general, three-year statute of limitations tolls an action against a nonperpetrator.

As between innocent victims who could not reasonably be expected to discover the effects of sexual abuse within the prescribed statute-of-limitations period and institutions that had *knowledge* of their employees' abusive behavior but took no action to remedy or prevent the abuse, equity is served by adopting a rule most favorable to those victims.