**UNITED STATES, Appellee,**

v.

**Alberto LOPEZ, Defendant, Appellant.**

**No. 96–1968.**

United States Court of Appeals,
First Circuit.

Heard March 3, 1998.

Decided June 12, 1998.

James P. Duggan for appellant.

Heidi E. Brieger, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief for appellee.

Before LYNCH, Circuit Judge, COFFIN and BOWNES, Senior Circuit Judges.

BOWNES, Senior Circuit Judge.

Defendant-appellant Alberto Lopez was convicted by a jury on four counts of federal narcotics offenses and two counts of criminal

forfeiture. The indictment included as a co-defendant one Angel Carrion, who pled guilty prior to trial on the counts directed against him individually and as a co-conspirator. Lopez was convicted on all the counts charged against him: conspiring to possess with intent to distribute heroin and cocaine base (21 U.S.C. § 846); possession of heroin with intent to distribute (21 U.S.C. § 841(a)(1)); possession of cocaine base with intent to distribute and distribution (21 U.S.C. § 841(a)(4)) (two counts); and two counts of criminal forfeiture, of money and an automobile (21 U.S.C. § 853).

Because of three prior narcotics convictions Lopez was given the mandatory life sentence. This appeal followed. We affirm.

Lopez raises five issues before us. One, the district court violated his right to a fair trial by failing to follow certain pre-trial orders. Two, violation of equal protection of the laws by trying the case before an all-white jury and the government striking a prospective Hispanic juror for no reason. Three, ineffective assistance of counsel. Four, the district court erroneously failed to enter a judgment of acquittal and failed to find as a matter of law that Lopez had been entrapped. Five, the district court committed plain error by the exclusion and admission of evidence bearing on the entrapment issue.

## A. *Jury Composition*

■ We start our review with the two issues involving the composition of the jury. Prior to the impanelment of the jury, defense counsel moved that the venire be dismissed because defendant "is going to be denied a jury with a reasonable likelihood of some of his peers, specifically, his ethnic group, being on that particular panel." Counsel's motion was based on a visual inspection of the venire and an examination of the jurors' names on the venire list. The motion was denied on the basis that the procedure followed in the Massachusetts district court had been approved by the Court of Appeals for the First Circuit.

In *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), the Court established the requirements for attacking the composition of a jury:

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury-selection process.

*Id.* at 364, 99 S.Ct. 664. Defendant has not met any of the three criteria.

In *United States v. Pion*, 25 F.3d 18 (1st Cir.1994), we rejected an attack on the composition of juries in the district court of Massachusetts based on under-representation of the Hispanic population. This attack was much better directed and armed than the one mounted before us. It was based on statistical evidence "indicating a 3.4% 'absolute disparity' between the 4.2% Hispanic representation in the relevant general population and the 0.80% Hispanic representation among persons appearing for juror orientation." *Id.* at 23. In our opinion we held:

> The first infirmity in the unfair cross-section claim is that the district court found, and Pion does not dispute, that the broadest data available—resident lists—are used to make up the Master Jury Wheel from which Eastern Division jury venires are drawn. There is no allegation, much less a showing, statistical or otherwise, that data more conducive to a fair cross section are available, let alone more fairly representative of eligible Hispanics in the relevant general population. Second, since the names included in the Master Jury Wheel are randomly drawn from the most inclusive data available, and random selection also determines to whom juror questionnaires are mailed, there can be no reasonable inference that the jury-selection process itself systematically excludes Hispanics at any stage up to and

including the distribution of juror questionnaires. *Id.* We further held:

> With no datum as to Hispanic representation on the Master Jury Wheel, and given the fact that the baseline data for comprising the Master Jury Wheel are the best available, there can be no reasonable inference that the relatively small Hispanic underrepresentation at juror orientation is attributable to anything other than the randomness of the draw from either the resident lists or the Master Jury Wheel.

*Id.* at 24. In light of these rulings, defendant has no basis for a fair cross-section challenge based only on visual observation and an examination of the venire's names.

■ Defendant's challenges to the prosecutor's striking of a prospective Hispanic juror does not get off the ground because there was no objection made at trial. The defining case for racial based challenges is *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). There is no need to reiterate the standards for showing that the striking of a juror (or jurors) was racially motivated, *see id.* at 96–98, 106 S.Ct. 1712; such a challenge should start with an objection by defense counsel and there was none here. Our standard of review is, therefore, plain error. *See United States v. Perez*, 35 F.3d 632, 635 (1st Cir.1994). There was no plain error.

### B. *Failure of the Government and District Court to Follow a Pre-trial Order*

The essence of defendant's claim is that the court, aided and abetted by the prosecutor, pressed for trial contrary to a pre-trial order issued by the magistrate judge and this deprived defense counsel of the time necessary to prepare an effective defense.

The order that is the fulcrum for defendant's argument was issued on July 18, 1995, by the magistrate judge. It stated:

> Request 6 and 7—Early release of Jencks Act material and names and addresses of government witnesses.
>
> The government agrees to disclose Jencks Act material and the names and addresses of government witnesses fourteen days prior to trial. To the extent of this compliance, the defendant's motion is allowed.

The district court judge set the trial date for August 7, 1995 at 9:00 a.m. Defense counsel received the notice of the trial date on July 31, 1995. He immediately informed the court by letter received at the clerk's office on August 1, 1995, that the government had not produced "a variety of materials" which it had been ordered to produce two weeks prior to trial. The letter further stated that the materials not produced included "materials I believe may be exculpatory, materials which might lead to and require further investigation, and tape cassette recordings some of which may be in Spanish and may portend translation difficulties."

On August 7, the date set for the trial to commence, defense counsel filed a written motion for a continuance and argued orally that, because he had not yet received the materials, he needed a continuance to properly prepare for trial.

The district court denied the motion for a continuance, but ordered that the jury would be impaneled on August 7th and trial would start on August 9th. This meant that counsel had ten days notice of the start of trial, not fourteen days as ordered by the magistrate.

On August 9th counsel for the defendant again moved for a continuance. On the same day defendant Lopez personally moved that the court dismiss his present attorney and appoint a new one. After a hearing, the court denied both motions, stating:

> THE COURT: All right. The Court has now had an opportunity to hear the defendant and defendant's counsel ex parte outside the hearing of the government with respect, specifically, to the defendant's motion to dismiss his appointed attorney and to have this Court appoint a new attorney; and, further, his motion objecting to the Court's not allowing him to address the Court and to request—a further request for a stay of these proceedings.

The Court, after consideration, is going to deny both of those motions and proceed to trial.

The Court believes that the defendant has not given or stated grounds that present a conflict with his own attorney or that warrant the dismissal of his attorney for the reasons stated in those motions.

The defendant further, with respect to his motion to continue, is denied, and I will be specific with respect to the several reasons that he has given to continue this trial.

First, he said that he's been presented today with new impeachment evidence. The Court finds that such evidence is not substantial and is digestible in the amount of time that he will have to consider this evidence; namely, from now until the time that he will be called upon to cross-examine the witness to be put on by the government.

The defendant also claims that there have been revisions to the transcripts. The Court believes that those revisions are minor in nature; and, furthermore, that the transcripts are not lengthy and that the defendant has had those transcripts for approximately one week.

Third ground for continuance, was the alleged extensive involvement of the confidential informant which the Court understands, or who the Court understands the government will not be calling. And the defendant has not stated other sufficient grounds on which to base a continuance because of the confidential informant's involvement.

The defendant has also moved for a continuance on the grounds that he, the defendant, himself, has not had time to listen to all of the tapes, but the defendant has had access to transcripts of those taped conversations, and the Court finds that sufficient.

Finally, the defendant's counsel stated before the break that the final status report of the magistrate/judge wasn't issued until July 18th, but at that time there were no motions pending in this case, and the defendant does stand forewarned at that point when a magistrate/judge files a final pretrial or final status report, that trial is imminent.

We make two observations. First, the court did not say anything about the government agreement, as contained in the magistrate judge's pre-trial order, "to disclose Jencks Act material and the names and addresses of government witnesses fourteen days prior to trial." Our second observation is that Lopez's motion to dismiss his present counsel and appoint a new one would have, if granted, resulted in a lengthy continuance. We also note that the denial of the motion to appoint new counsel has not been appealed.

We are aware, of course, that review of a denial of a motion for continuance is under the abuse of discretion standard. *See United States v. Neal*, 36 F.3d 1190, 1205 (1st Cir. 1994). But this was not a routine denial of a requested continuance. Defendant asserts that he was entitled to rely on the order of the magistrate judge specifying that the government would disclose the requested information fourteen days prior to trial. Parties are entitled to rely on pre-trial orders of the district court; they are a vital link in the trial process. We, therefore, must determine whether jump-starting the trial deprived the defendant of a fair trial.

Defendant argues that the "Confidential Informant was never located, nor subpoenaed to trial." Br. at 35. This contention is without merit. The government informed defense counsel of the name of the informant, and that he would not be called as a government witness. Defendant had known the confidential informant for a number of years. During a bench conference defense counsel stated, "They can call Mr. Cruz [the confidential informant], *I could call Mr. Cruz* but they both talk about the same conversations." (Emphasis ours.) It seems rather evident that neither party wanted Cruz to testify.

The government states that it furnished all of the information requested by the defense. It states that it made available for inspection and copying all of the consensual tape recordings of the negotiations between defendant and government agents on March 13, 1995. At the same time the government

provided defense counsel with copies of DEA reports relative to the tape-recorded conversations.

At least five days prior to trial, defense counsel was furnished with a complete set of the Spanish and English transcripts of the tape recordings by the government. And at least five to six days prior to each witness's testimony at trial, the government provided Jencks Act statements to defense counsel. The government points out that this exceeds the requirements of the Jencks Act, which it does. *See* 18 U.S.C. § 3500(a) (no statement of a government witness "shall be the subject of subpena [sic], discovery, or inspection until said witness has testified on direct examination in the trial of the case." But the government had agreed to produce the statements fourteen days prior to the start of trial and the court had so ordered.

■ In light of the magistrate judge's pretrial order we think the district court should have given the parties fourteen days notice of the start of the trial. We are fully aware of the pressure on busy district court judges to try cases as expeditiously as possible. The court, however, also has a duty to follow its own pre-trial orders. This is especially so when defense counsel claims that a deviation from the order will impair his ability to mount a proper defense. In this case, conviction meant a life sentence for the defendant.

■ Based on our careful review of the record we cannot find that the failure to follow the magistrate judge's order seriously prejudiced the defendant. It clearly did not deprive him of a fair trial. Defense counsel was able to cope effectively with the shortened period of preparation. He was furnished with all of the transcriptions, Spanish and English, of the wire recordings of the drug transactions at least five days before the trial started. Despite one minor delay due to poor communication between the court and the officials in charge of defendant's place of confinement in Plymouth, Massachusetts, defendant was able to examine the Spanish version of the wire recordings and discuss them with his attorney. We must note here that the court insisted that defendant and defense counsel be furnished the materials sought as promptly as possible. Although we are sure that defense counsel was put under extra pressure because of the advanced trial date, he responded ably and used the materials furnished by the government effectively.

### C. *The Entrapment Defense*

■ The only defense that defendant pursued, and the only one realistically available, was that he had been entrapped by an acquaintance of long-standing, Pedro Cruz. Cruz had been associated with defendant in prior drug sales. Cruz was a confidential informant employed by the DEA during the time of the charged offenses.

Before defendant took the stand, the court advised defense counsel that, if defendant asserted entrapment and testified, his prior drug convictions could be used on cross-examination by the government on the issue of predisposition. Defense counsel objected to this ruling. The court gave defendant additional time to consider his options. After the prosecutor had, during cross-examination, brought out defendant's prior convictions [1], the judge instructed the jury as follows:

> Jurors, the evidence regarding the alleged crimes previously committed by Mr. Lopez should not be used by you as evidence that he actually committed the crimes charged in this case.
>
> The prior crimes are offered by the government only in its attempt to rebut the testimony of the defendant and to show that the defendant was predisposed or inclined to commit a crime such as those which have been charged in this case.

On direct examination defendant testified that he had been addicted to heroin and cocaine in the past. To conquer his addiction he had joined both narcotics anonymous (NA) and alcoholics anonymous (AA). He had overcome his addiction and obtained a

---

1. Predisposition evidence is normally not permissible, but it is proper where, as here, it is used to rebut defendant's claim of entrapment.

good paying job. For about three years he led a normal life; he was a loving father and a devoted husband. His life started to unravel when the confidential informant, Pedro Cruz, started calling him in May of 1994 and importuning him to obtain drugs for sale to customers. Unfortunately for defendant, the customers were undercover DEA agents.

When defense counsel asked defendant what Cruz had said to him during the telephone conversations, the government objected on hearsay grounds ("classic hearsay") and the court upheld the objection. Defense counsel objected to the ruling and argued strenuously that Cruz's telephone statements should be allowed in evidence because they were vital to the entrapment defense. The judge adamantly refused to allow the testimony. He did, however, rule that defendant could be asked "about the phone calls he got, how many meetings they [had], what they did, but he cannot get into evidence out-of-court-statements." The court added: "He can say what he did as the result of the phone calls."

Counsel, however, did not raise the one argument that might have been accepted by the court: that the testimony was not offered for the truth of the matter asserted but to show defendant's state of mind as bearing on the entrapment defense, and therefore was not hearsay. *See United States v. Cantu*, 876 F.2d 1134, 1137 (5th Cir.1989); 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 801.03 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.1998). Because defendant failed to raise this argument below, he is precluded from pursuing it on appeal; we consider it waived. *See United States v. Cardoza*, 129 F.3d 6, 19 (1st Cir.1997).

Although defense counsel was not able to put in evidence defendant's testimony as to what Lopez had said during the numerous phone calls assertedly made by Cruz, he was able by dint of persistent and adroit questioning to paint a picture of Cruz repeatedly asking defendant to come back into the drug business. Defendant testified that at first he refused Cruz's requests, but finally caved in "to get him off my back."

Defense counsel then asked him: "What was your state of mind at that time, Sir?" The response was: "He was like trying to make me do something that I didn't want to do."

Defendant testified in effect that, as a result of Cruz inducing him back into the drug trade, he became an addict again and that, over time, his state of mind changed.

Although Cruz's telephone statements were not hearsay, evidence was submitted to the jury sufficient for it to find entrapment, if it chose to do so. And the court gave an entrapment instruction which has not been attacked on appeal.

It is not difficult to understand the jury's guilty verdict. There was a mass of overwhelming evidence against the defendant. In addition to transcripts of wire recordings of what was said by defendant and his cohorts at the various drug transactions and set-up meetings, there was testimony by three DEA agents and one Massachusetts state trooper, who either were directly involved in drug sales in which defendant was a participant or observed him during surveillance of the drug transactions. The other issues raised by defendant merit only scant discussion.

The ineffective assistance of counsel claim is deferred until after it is considered by the district court. *See United States v. Mala*, 7 F.3d 1058, 1063 (1st Cir.1993) ("We have held with a regularity bordering on monotonous that fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court.").

The district court did not err in failing to enter a judgment of acquittal. Nor did it err in failing to rule as a matter of law that defendant had been entrapped. And the district court did not commit plain error in its evidentiary rulings during the entrapment part of the trial.

The judgment below is *Affirmed.*