<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 98-1438

                       MICHAEL E. KELLY,
                     Plaintiff, Appellant,

                               v.

               ROBERT MARCANTONIO, ETC., ET AL.,
                     Defendants, Appellees.

                      ____________________

No. 98-1439

                       STEPHEN B. KELLY,
                     Plaintiff, Appellant,

                               v.

               ROBERT MARCANTONIO, ETC., ET AL.,
                     Defendants, Appellees.

                      ____________________

No. 98-1533

                       MICHAEL E. KELLY,
                      Plaintiff, Appellee,

                               v.

                      ROBERT MARCANTONIO,
                      Defendant, Appellee.

                      ____________________

                 ROMAN CATHOLIC BISHOP, ET AL.,
                    Defendants, Appellants.

                      ____________________

No. 98-1542

                       STEPHEN B. KELLY,
                      Plaintiff, Appellee,

                               v.

                      ROBERT MARCANTONIO,
                      Defendant, Appellee.

                      ____________________

                 ROMAN CATHOLIC BISHOP, ET AL.,
                    Defendants, Appellants.

                      ____________________

No. 98-2137

                         KENNETH SMITH,
                     Plaintiff, Appellant,

                               v.

                 WILLIAM C. O'CONNELL, ET AL.,
                     Defendants, Appellees.

                      ____________________

No. 98-2138

                         KENNETH SMITH,
                      Plaintiff, Appellee,

                               v.

                 WILLIAM C. O'CONNELL, ET AL.,
                      Defendant, Appellee.

                      ____________________

                 ROMAN CATHOLIC BISHOP, ET AL.,
                    Defendants, Appellants.

                      ____________________

         APPEALS FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF RHODE ISLAND

          [Hon. Ernest C. Torres, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

                Stahl and Lynch, Circuit Judges.

                     _____________________

   Richard C. Bicki, with whom Susan E. McGuirl, Cerilli, McGuirl
& Bicki, Lise Iwon and Laurence & Iwon were on brief, for
appellants Michael E. Kelly and Stephen B. Kelly.
   Carl P. DeLuca for appellant Kenneth Smith.
   Thomas R. Bender, with whom James T. Murphy, Hanson, Curran,
Parks & Whitman and William T. Murphy were on brief, for appellees
Roman Catholic Bishop, et al.
   Gerald C. DeMaria, with whom Paul S. Callaghan and Higgins
Cavanagh & Cooney, LLP were on brief, for appellee Robert
Marcantonio.
   Charles Wilson, with whom William T. Murphy, James T. Murphy,  
Thomas R. Bender and Hanson, Curran, Parks & Whitman were on brief
for defendants.

                      ____________________

                         August 6, 1999
                      ____________________

        TORRUELLA, Chief Judge.  In these consolidated cases,
plaintiff-appellants Michael Kelly, Stephen Kelly, and Kenneth
Smith seek to recover damages for alleged sexual abuse they
suffered when they were minors.  Plaintiff-appellants allege that
the perpetrators of this sexual abuse were priests serving in the
Roman Catholic Diocese of Providence, Rhode Island.  The defendant-
appellees are the priests, Father Robert Marcantonio
("Marcantonio") and Father William C. O'Connell ("O'Connell"),
various diocesan officials, and the churches to which the priests
were assigned (collectively, the "hierarchy defendants").  
Plaintiff-appellants appeal the district court's grant of summary
judgment in favor of all defendant-appellees on the ground that
plaintiff-appellants' claims are barred by the statute of
limitations.  The hierarchy defendants also appeal, challenging the
district court's denial of their motion to dismiss on the ground
that adjudication of the claims asserted against them would violate
the religious autonomy principle rooted in the First Amendment.
                           BACKGROUND
        Because these appeals focus on the specific issues of
whether plaintiff-appellants' claims of childhood sexual abuse are
time-barred, and whether the First Amendment precludes the district
court from adjudicating the claims asserted against the hierarchy
defendants, it is not necessary to provide a complete account of
the allegations set forth in the complaints.  We will, however,
sketch the facts central to the issues before us.
        In their consolidated cases, plaintiff-appellants seek to
recover damages under various state law tort theories for the
alleged sexual abuse they suffered when they were minors.  In
addition to the claims asserted against the priest-perpetrators,
plaintiff-appellants assert various claims sounding in negligence
and vicarious liability against the non-perpetrator hierarchy
defendants.
        Specifically, plaintiff-appellant Kenneth Smith alleges
that he was sexually abused by O'Connell during the period between
1972 and 1977 while he was in high school.  Plaintiff-appellants
Stephen and Michael Kelly allege that they were sexually abused by
Marcantonio.  Stephen alleges that the assaults on him took place
between 1975 and 1981, and Michael alleges that he was assaulted
between 1981 and 1985.  Plaintiff-appellants further allege that
the hierarchy defendants knew that O'Connell and Marcantonio
previously had committed sexual assaults and that the hierarchy
defendants not only failed to disclose this information, but also
engaged in a "cover-up" after the fact by transferring the priests
to different parishes.  All three plaintiff-appellants filed their
lawsuits in 1993 -- more than eight years after the alleged abuses
occurred.
        Prior to 1992, the statute of limitations set forth in
9-1-14(b) applied to all claims of childhood sexual abuse.  It
requires all "actions for injuries to the person" to be brought
within three years after the cause of action accrues.  See R.I.
Gen. Laws  9-1-14(b).  Under  9-1-14(b), a cause of action for
childhood sexual abuse accrues on the date of injury.  See Kelly v.
Marcantonio, 678 A.2d 873, 877 (R.I. 1996).  
        In its 1993 legislative session, the Rhode Island
Legislature enacted  9-1-51, which enlarged the statute of
limitations period for claims against perpetrators of childhood
sexual abuse.  See id. at 876.  Section 9-1-51 permits an action
against the perpetrator to be brought up to seven years after the
victim discovers or reasonably should have discovered that the
abuse occurred.  See R.I. Gen. Laws  9-1-51(a).  The Rhode Island
Supreme Court has held, however, that  9-1-51 may not be applied
retroactively to revive claims previously time-barred as of
July 25, 1993, the effective date of the legislation.  See Kelly,
678 A.2d at 882, 883.  It is undisputed that all of plaintiff-
appellants' claims were time-barred prior to the effective date of
9-1-51.  Therefore, the seven-year statute of limitations
contained in  9-1-51 does not apply here.
        To avoid dismissal under  9-1-14(b), plaintiff-
appellants rely primarily upon two separate tolling theories.  The
first is contained in  9-1-19, which tolls the period of
limitations with respect to persons of "unsound mind."  Section 9-
1-19 provides, in relevant part:
                 If any person at the time any such cause of
        action shall accrue to him or her shall be
        . . . of unsound mind . . . the person may
        bring the cause of action, within the time
        limited under this chapter, after the
        impediment is removed.

R.I. Gen. Laws  9-1-19.  Plaintiff-appellant Smith argues that  
his inability to remember the alleged sexual assaults by
Fr. O'Connell until sometime in 1991 or 1992 qualifies as a tolling
feature under the "unsound mind" provision, thus saving his claims
from dismissal.  Plaintiff-appellants Stephen and Michael Smith
make a slightly different argument.  The Smiths claim that although
they have been conscious of the assaults on them ever since they
occurred, they did not appreciate their wrongful nature until
sometime in 1991 because Fr. Marcantonio informed them that such
assaults were part of their religious training in sexuality.  The
Smiths contend that they were of "unsound mind" up until the time  
they realized the wrongful nature of Fr. Marcantonio's advances,
and thus their claims against Fr. Marcantonio are also preserved.
        The second tolling provision upon which plaintiff-
appellants rely is contained in  9-1-20.  Section 9-1-20 postpones
accrual of a cause of action that has been fraudulently concealed:
                 If any person, liable to an action by another,
        shall fraudulently, by actual
        misrepresentation, conceal from him or her the
        existence of the cause of action, the cause of
        action shall be deemed to accrue against the
        person so liable at the time when the person
        entitled to sue thereon shall first discover
        its existence.  

R.I. Gen. Laws  9-1-20.  Plaintiff-appellants assert that the
hierarchy defendants' failure to disclose their knowledge of prior
sexual misconduct by both O'Connell and Marcantonio constitutes
fraudulent concealment within the meaning of  9-1-20.  Thus,
plaintiff-appellants contend that the period of limitations on
their claims against the hierarchy defendants did not begin to run
until they first discovered the hierarchy defendants' prior
knowledge and concealment.  Plaintiff-appellants Stephen and
Michael Kelly also rely on  9-1-20 to preserve their claims
against Fr. Marcantonio.  The Kellys assert that Fr. Marcantonio
fraudulently concealed the existence of their causes of action
against him by falsely representing that his sexual assaults
constituted religious training in sexuality.  Thus, the Kellys
contend that their causes of action against Fr. Marcantonio did not
accrue until they first discovered the falsity of these
representations.

                           DISCUSSION
        Before we can delve into the issues raised in this
appeal, we must first determine the order in which we must proceed.  
As noted supra, in response to the claims asserted against them,
the hierarchy defendants moved to dismiss on the ground that the
religious autonomy principle rooted in the First Amendment
precluded the district court from adjudicating the claims asserted
against them.  Throughout this litigation, both parties have
characterized the hierarchy defendants' motion as a motion to
dismiss for lack of subject matter jurisdiction.  Whether the
defendants' motion involves subject matter jurisdiction at all is
a debatable point, but we will accept, arguendo, the parties'
characterization.  Therefore, on appeal, the first question we must
resolve is whether the United States Supreme Court's decision in
Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998),
requires us to address the hierarchy defendants' First Amendment
argument before considering the merits of plaintiff-appellants'
claims.
        In Steel Co., the Supreme Court declared that courts
should generally determine whether subject matter jurisdiction
exists before reaching the merits of a plaintiff's claim.  See 523
U.S. at 92, 96.  In its opinion, however, the Court narrowly used
the term "subject matter jurisdiction," making a clear distinction
between Article III subject matter jurisdiction and other sources
of subject matter jurisdiction.  As this court recently recognized,
the decision in Steel Co. "distinguishes between Article III
jurisdiction questions and statutory jurisdiction questions,
holding that the former should ordinarily be decided before the
merits, but the latter need not be."  Parella v. Retirement Bd. of
the Rhode Island Employees' Retirement System, 173 F.3d 46, 54 (1st
Cir. 1999).
        It is clear that the hierarchy defendants' religious
autonomy arguments do not derive from Article III.  It is the First
Amendment -- and not Article III -- that prohibits secular courts
from intervening in the internal affairs of the hierarchical
churches by deciding issues of religious doctrine.  See, e.g.,
Serbian E. Orthodox Diocese for the United States and Can. v.
Milivojevich, 426 U.S. 696 (1976); Presbyterian Church in the
United States v. Mary Elizabeth Blue Hull Mem'l Presbyterian
Church, 393 U.S. 440 (1969).  This court recently held that an
Eleventh Amendment defense raised by a state should not be treated
as an Article III question for the purposes of Steel Co.  See
Parella, 173 F.3d at 57.  In reaching this conclusion, the Parella
court reasoned that the relevant maxim outside the Article III
context "is not that federal courts cannot act without first
establishing their jurisdiction, but rather that courts should not
reach constitutional questions in advance of the necessity of
deciding them."  Id. at 56 (internal quotations omitted).  We see
no reason why the reasoning of Parella should not control here.  We
therefore choose to defer the hierarchy defendants' First Amendment
arguments, and proceed directly to the merits of plaintiff-
appellants' statute of limitations tolling claims.
                     STATUTE OF LIMITATIONS
        In the proceedings below, the district court granted
summary judgment in favor of defendants on the ground that  
plaintiff-appellants' claims of childhood sexual abuse were time-
barred.  We review the district court's grant of summary judgment
de novo, viewing the facts in the light most favorable to the
nonmovants.  See Dominique v. Weld, 73 F.3d 1156, 1158 (1st Cir.
1996).
        Summary judgment is appropriate when "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no genuine
issue as to any material fact and that the moving party is entitled
to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary
judgment will be properly entered against a party who "fails to
make a showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will bear
the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S.
317, 322 (1986).  In this case, plaintiff-appellants bear the
burden of proving the applicability of the tolling provisions
contained in  9-1-19 and 9-1-20.  See Bonilla-Avils v. Southmark
San Juan, Inc., 992 F.2d 391, 393 (1st Cir. 1993).
        a.  "Unsound mind"  
        Section 9-1-19 does not define "unsound mind."  Nor has
the Rhode Island Supreme Court defined the term for purposes of
statute of limitations tolling purposes.  In the proceedings below,
the district court certified to the Rhode Island Supreme Court the
question of whether "repressed recollection of past sexual abuse
could qualify as a tolling feature encompassed within the 'unsound
mind' factor in  9-1-19."  Kelly, 678 A.2d at 879.  Unfortunately,
the Rhode Island Supreme Court did not provide clear guidance,
responding merely that whether repressed recollection is included
within the tolling condition of "unsound mind" within a particular
case is a "question of law determination to be made by the trial
justice."  See id.
        Left to its own devices, the district court engaged in
exhaustive and thorough research in an attempt to discover what
meaning the General Assembly ascribed to the term "unsound mind"
when it enacted  9-1-19.  It ultimately concluded that "unsound
mind" as used in  9-1-19 refers to a condition that renders a
plaintiff incapable of managing his or her everyday affairs.  We
can find no reason to disturb the court's well-reasoned conclusion.  
        Although the Rhode Island Supreme Court has never defined
"unsound mind" for statute of limitations tolling purposes, it has
interpreted the term, in other contexts, as a condition that
renders an individual legally incompetent or incapable of managing
his or her everyday affairs.  See Miller v. Rhode Island Hosp., 625
A.2d 778, 785 (R.I. 1993) ("unsound mind" in the context of legal
incompetency defined as the inability to govern one's self and
manage one's affairs); Sosik v. Conlon, 164 A.2d 696, 698 (R.I.
1960) (in context of suit for cancellation of real estate mortgage
and promissory note, "unsound mind" characterized as "a condition
of insanity or idiocy").  These decisions are consistent with the
district court's interpretation.
        Further, it is a rule of statutory construction in Rhode
Island that "[e]xceptions in statutes of limitations in favor of
persons laboring under disabilities are strictly construed."  
Kenyon v. United Electric Railways Co., 151 A. 5, 8 (R.I. 1939).  
The district court's interpretation clearly comports with this
rule.
        Finally, we note that, as a federal court sitting in
diversity jurisdiction at plaintiff-appellants' election, we are
reluctant to push state law well beyond its current confines.  See,
e.g., Siedle v. Putnam Investments, Inc., 147 F.3d 1, 7 (1st Cir.
1998).  Thus, we are not inclined to accept plaintiff-appellants'
argument in favor of an expansive definition of "unsound mind."  
Such an argument should have been directed to the state courts in
the first instance.
        Based on the foregoing, and because we find plaintiff-
appellants' arguments in favor of their more liberal interpretation
unpersuasive, we affirm the district court's well-reasoned
interpretation.  We pause only to comment on several arguments
raised by plaintiff-appellants in their briefs.
        First, plaintiff-appellants take issue with the district
court's conclusion with respect to the inferences that can be drawn
from the historical context of  9-1-19.  In its opinion, the
district court noted that  9-1-19 was enacted as part of the Court
and Practice Act of 1905, which includes a chapter on probate
proceedings.  The district court further noted that the probate
chapter in the Court and Practice Act authorized the appointment of
a guardian for "the person and estate of any idiot, lunatic or
person of unsound mind . . . ."  It therefore concluded that at the
time of enactment of  9-1-19, the General Assembly equated the
condition of "unsound mind" with the conditions of idiocy and
lunacy, both of which are recognized as completely incapacitating
conditions.  In their briefs, plaintiff-appellants seize on the
district court's reasoning to argue that because the General
Assembly has changed the standard for appointment of guardians, see
R.I. Gen. Laws  33-15-4, the historical context of  9-1-19 should
no longer bear on its interpretation.  Plaintiff-appellants'
argument is unpersuasive.  The General Assembly's subsequent
amendment of the law governing appointment of guardians has little
bearing on the legislature's intended meaning of the term "unsound
mind" within the context of  9-1-19.  
        Plaintiff-appellants next argue that the district court's
conclusion that unsound mind refers to a condition that renders a
plaintiff incapable of managing his or her everyday affairs is
inconsistent with the Rhode Island Supreme Court decision in Kelly
v. Marcantonio, 678 A.2d 873 (R.I. 1996).  We disagree.  Although
the Rhode Island Supreme Court left open the possibility that
repressed recollection of past sexual abuse could qualify as an
unsound mind disability under  9-1-19, it stopped well short of
adopting such a definition.  And, as we have said, we are reluctant
to push state law to new frontiers in a plaintiff-elected diversity
action where the state's Supreme Court has evinced reluctance to
take the approach the diversity plaintiff proposes.  See Siedle,
147 F.3d at 7.
        Finally, plaintiff-appellants challenge the district
court's conclusion that the subsequent enactment of  9-1-51 lends  
support to its interpretation of the "unsound mind."  We agree with
plaintiff-appellants that the subsequent enactment of  9-1-51
lends support only to the district court's conclusions that: (1)
the 1993 Rhode Island legislature wished to distinguish between
"unsound mind" and repressed recollection; and (2) the
legislature's decision not to incorporate a discovery provision in
9-1-14(b) at the same time that it enacted the discovery
provision contained in  9-1-51 evinced an intent that claims
governed by  9-1-14(b) continue to be considered as accruing at
the time of injury.  This point does not, however, persuade us that
the district court's conclusion was error.
        In sum, because we are unpersuaded by plaintiff-
appellants' arguments, we affirm the district court's
interpretation of "unsound mind."  Further, because the facts are
undisputed, and plaintiff-appellants challenge only the district
court's legal interpretation of "unsound mind," we need not re-
apply the law to the facts.  Plaintiff-appellants have never argued
that their respective conditions satisfy the definition of "unsound
mind" offered by the defendants, and ultimately adopted by the
district court.  As plaintiff-appellants concede in their
memorandum in opposition to summary judgment, "if the court adopts
Defendants' definition [of unsound mind], Defendants must prevail
on this issue."  We agree with the district court (and with
plaintiff-appellants) that, even when the evidence presented by the
plaintiff-appellants is viewed in the light most favorable to them,
it fails to establish that they suffered from "unsound mind" within
the meaning of  9-1-19.
        b.  Fraudulent concealment
        We next address plaintiff-appellants' fraudulent
concealment arguments.  As previously noted, plaintiff-appellants
rely on the fraudulent concealment tolling doctrine to preserve
their claims against the hierarchy defendants and Father
Marcantonio.  Specifically, plaintiff-appellants allege that the
hierarchy defendants knew that both Frs. Marcantonio and O'Connell
had previously committed sexual assaults and that the hierarchy
defendants not only failed to disclose this information, but also
engaged in a cover-up by transferring these priests from parish to
parish whenever allegations of sexual abuse surfaced.  Plaintiff-
appellants contend that this behavior postponed the accrual of
their claims against the hierarchy defendants until plaintiff-
appellants became aware of the hierarchy defendants' knowledge and
concealment.  Plaintiff-appellants Stephen and Michael Kelly
further contend that Father Marcantonio fraudulently concealed the
existence of their causes of action against him by convincing them
that his sexual advances were part of their religious training in
sexuality.  These factual assertions were denied and the district
court did not test the truth of the assertions because it concluded
that they did not, as a matter of law, meet the definition of
fraudulent concealment.
        We first address the fraudulent concealment tolling
theory as it applies to plaintiff-appellants' claims against the
hierarchy defendants.  In order to establish fraudulent
concealment, plaintiff-appellants must prove that: (1) the  
hierarchy defendants made an actual misrepresentation of fact; and
(2) in making such misrepresentation, the hierarchy defendants
fraudulently concealed the existence of plaintiff-appellants'
causes of action.  See R.I. Gen. Laws  9-1-20.  On appeal,
plaintiff-appellants contend that the district court erred by
interpreting "actual misrepresentation" as requiring some express
misrepresentation or affirmative conduct on the part of the
hierarchy defendants.  In the alternative, plaintiff-appellants
argue that, even if  9-1-20 does require an express
misrepresentation or some affirmative conduct, a fiduciary
relationship existed between the hierarchy defendants and
plaintiff-appellants, which imposed on the hierarchy defendants a
duty to disclose their knowledge of previously committed sexual
assaults.  Under this theory, plaintiff-appellants contend that the
hierarchy defendants' silence about the prior assaults by Frs.
Marcantonio and O'Connell should be considered an "actual
misrepresentation" within the meaning of  9-1-20.
        The Rhode Island Supreme Court has never specifically
addressed the fiduciary relationship theory asserted by plaintiff-
appellants within the context of  9-1-20.  Nor has the Supreme
Court addressed the specific question of whether an "actual
misrepresentation" within the meaning of  9-1-20 must consist of
an express or affirmative misrepresentation.  Fortunately, we
conclude that we need not be the first court to resolve these
specific questions of Rhode Island law.  For even assuming arguendo
that plaintiff-appellants' interpretation prevails, and the
hierarchy defendants' silence does qualify as an "actual
misrepresentation" within the meaning of  9-1-20, we fail to see
how such silence concealed from plaintiff-appellants the "existence
of [their] cause of action."  R.I. Gen. Laws  9-1-20.   
        All of plaintiff-appellants' claims are claims for
damages for the sexual abuse perpetrated by the priest-defendants.  
In making these claims, plaintiff-appellants do not allege that the
hierarchy defendants' silence misled them into believing that the
alleged sexual abuse did not occur, that it had not been committed
by the priests, or that it had not resulted in injury to plaintiff-
appellants.  In other words, the hierarchy defendants never
concealed from any of the plaintiff-appellants the fact of the
injury itself.  Rather, the essence of plaintiff-appellants'
fraudulent concealment argument is that the hierarchy defendants'
silence concealed from them an additional theory of liability for
the alleged sexual abuse.  This argument misses the mark.  For a
cause of action to accrue, the entire theory of the case need not
be immediately apparent.  See Arnold v. R.J. Reynolds Tobacco Co.,
956 F. Supp. 110, 117 (D.R.I. 1997); Benner v. J.H. Lynch & Sons,
641 A.2d 332, 337 (R.I. 1994).  Once injured, a plaintiff is under
an affirmative duty to investigate diligently all of his potential
claims.  See Arnold, 956 F. Supp. at 117; Benner, 641 A.2d at 338.  
In this case, as soon as plaintiff-appellants became aware of the
alleged abuse, they should also have been aware that the hierarchy
defendants, as the priests' "employers," were potentially liable
for that abuse.  See Doe v. Archdiocese of Washington, 689 A.2d
634, 645 (Md. Ct. Spec. App. 1997) (a plaintiff who is sexually
assaulted by a priest is on inquiry notice of his potential claims
against the Archdiocese, as the priest's employer).  As the Rhode
Island Supreme Court has pointed out in a related context "[t]he
plaintiff's certitude of negligence [of a potential defendant]
cannot be the deciding factor to determine when the statute of
limitations begins to run."  Benner, 641 A.2d at 338.  To postpone
the accrual of their causes of action until plaintiff-appellants
completed their investigation of all potential liability theories
would destroy the effectiveness of the limitations period.        
        Alternatively, if the plaintiffs' theory is thought of as
a sort of discovery rule argument, it still is not persuasive.  
Plaintiff-appellants contend that a discovery rule is appropriate
under the circumstances of this case because at the time the
alleged abuse occurred plaintiff-appellants had no reason to
suspect that the hierarchy defendants were aware of prior sexual
assaults by Frs. Marcantonio and O'Connell.  However, the Rhode
Island Supreme Court has expressly rejected the extension of a
discovery rule to claims against non-perpetrator defendants for
damages arising from childhood sexual abuse.  See Kelly, 678 A.2d
at 878.  We therefore decline plaintiff-appellants' request.
        We turn now to Michael and Stephen Kelly's contention
that Father Marcantonio fraudulently concealed the existence of
their causes of action against him by convincing them that his
sexual advances were part of their religious training in sexuality.  
On appeal, the Kellys contend that the district court erred by
interpreting  9-1-20 as requiring that a potential plaintiff rely
on the "actual misrepresentation."  We agree with the district
court that reliance is an essential element of the fraudulent
concealment tolling provision.  The statute requires "fraudulent"
concealment, and under Rhode Island law, reliance is an essential
element of fraud.  See National Credit Union Admin. Bd. v. Regine,
795 F. Supp. 59, 70 (D.R.I. 1992).
        We further agree that the Kellys' alleged reliance on
Father Marcantonio's misrepresentations was unreasonable as a
matter of law.  According to the record, Father Marcantonio's
alleged abuse continued for years, and ended only when both Kellys
reached the age of twenty.  As the district court noted, it is
beyond comprehension that an otherwise competent twenty year old
adult would continue to believe that Father Marcantonio's sexual
advances were part of his religious training.  See Doe v. United
Methodist Church, 673 N.E.2d 839, 844-45 (Ind. Ct. App. 1996)
(continued reliance by plaintiff upon representations made by
defendant that sexual activity was a part of the accepted
counseling process was unreasonable as a matter of law); E.J.M. v.
Archdiocese of Philadelphia, 622 A.2d 1388, 1395 (Pa. Super. Ct.
1993) (plaintiff's reliance on priest-defendant's assurances that
sexual acts being performed on him were necessary for his spiritual
development was unreasonable as a matter of law).  We therefore
conclude that Father Marcantonio's statements to the Kellys did not
rise to the level of fraudulent concealment.  Therefore, the
Kellys' claims against Father Marcantonio are time-barred under the
three-year statute of limitations contained in  9-1-14(b).
        c.  Continuing Tort Theory
        In a final attempt to avoid the statute of limitations
altogether, plaintiff-appellants assert various conspiracy theories
against the hierarchy defendants.  Under these theories,
plaintiff-appellants attempt to articulate a legal basis for
holding the hierarchy defendants independently liable for damages
arising from the alleged sexual abuse.  The essence of these claims
is that the hierarchy defendants conspired, after the fact, to
conceal the alleged acts of sexual abuse perpetrated by
Frs. Marcantonio and O'Connell.  Because this alleged conspiracy
continues to the present day, plaintiff-appellants contend that the
period of limitations on their claim has not even begun to run.
        The fatal weakness of this theory, however, is that none
of these conspiracies was even remotely asserted in any of
plaintiff-appellants' complaints.  Ultimately, plaintiff-
appellants' complaint merely alleges that the hierarchy defendants
failed to come forward with information concerning alleged sexual
assaults by Frs. Marcantonio and O'Connell.
        Finally, even assuming arguendo that the actions of the  
hierarchy defendants did amount to criminal acts under the various
theories asserted by plaintiff-appellants, we conclude that such
claims would still be time-barred.  It is  9-1-2 that enables
plaintiff-appellants to assert their criminal conspiracy theories
as civil causes of action.  However, even though plaintiff-
appellants seek relief under  9-1-2, the nature of their claims
still arises out of the alleged sexual abuse perpetrated by the
priest-defendants.  Plaintiff-appellants seek damages for their
sexual abuse -- not for any alleged conspiracy or cover-up by the
hierarchy.  Thus, the limitation period set forth in  9-1-14(b)
remains the applicable limitations period.  See Lyons v. Town of
Scituate, 554 A.2d 1034, 1036 (R.I. 1989) (where plaintiff's claim
for damages under  9-1-2 arose out of an alleged assault and
battery, appropriate limitations period was that applicable to
"injuries to the person" set forth in  9-1-14(b)).  As discussed
supra, plaintiff-appellants' claims for damages arising from their
sexual abuse are time-barred under  9-1-14(b).
        d.  Other Tolling Theories
        In their brief, plaintiff-appellants briefly mention a
number of other tolling theories, including equitable estoppel,
public policy, duress, and undue influence.  Plaintiffs complain
that theses theories were not properly before the district court
when it granted summary judgment.  Specifically, plaintiffs claim
that they did not have ample opportunity to fully discover and
address these other tolling theories, and that the district court
abused its discretion in denying their Fed. R. Civ. P. 56(f) motion
for additional discovery.  We disagree.
        As this court has stated, "[a] plaintiff's speculative
assertions that the defendant has unspecified facts in its
possession necessary for the plaintiff to develop its legal
theories . . . are entirely inadequate to extract the balm of Rule
56(f)."  C.B. Trucking, Inc. v. Waste Management, Inc., 137 F.3d
41, 45 (1st Cir. 1997) (internal quotation marks omitted).  
Plaintiff-appellants have failed to specify any material evidence
in support of these theories that they would likely uncover if
given additional time for discovery.  Accordingly, the district
court acted well within its discretion in denying their Fed. R.
Civ. P. 56(f) motion.
                           CONCLUSION
        Based on the foregoing, the district court's grant of
summary judgment in favor of defendant-appellees is affirmed.

</body>

</html>