August 1, 2024

**Supreme Court**

No. 2023-98-Appeal.
No. 2023-109-Appeal.
(P 22-2656M)

Philippe L. de Vries       :

v.       :

Anthony L. Gaudiana, Jr.       :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2023-98-Appeal.
No. 2023-109-Appeal.
(P 22-2656M)

Philippe L. de Vries      :

v.      :

Anthony L. Gaudiana, Jr.      :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Lynch Prata, for the Court.** In these consolidated appeals, the petitioner, Philippe L. de Vries, appeals from a final order of the Family Court granting the motion to dismiss filed by the respondent, Anthony L. Gaudiana, Jr. The petitioner contends that the hearing justice erred in ruling that the Rhode Island Uniform Parentage Act (UPA) (specifically G.L. 1956 § 15-8.1-501) superseded the petitioner's common law claims for parentage and in dismissing his miscellaneous petition "on the basis of *res judicata*." The respondent cross-appeals from the entry of an order denying his motion for attorneys' fees. He asserts that the hearing justice erred in ruling that his motion for attorneys' fees was not timely and that the hearing justice failed to conduct a hearing on his motion for attorneys' fees. For the reasons set forth herein, we affirm the orders of the Family Court.

- 1 -

## Facts

The instant case commenced on June 9, 2022, when petitioner filed a miscellaneous petition in the Family Court concerning a child whose parents are respondent and the late Christine Hasselbrock.[1]  The petitioner first met Ms. Hasselbrock in 1998 at Brown University, where he was working on a research project and where Ms. Hasselbrock was "employed as a temporary clerical worker on the project."  The petitioner was twenty-five years older than Ms. Hasselbrock and upon becoming "casual acquaintances," he began to provide financial assistance to her as well as serving "as a mentor and surrogate parent" to her for twenty-three years.[2]  The petitioner had a "platonic relationship" with Ms. Hasselbrock, and she "often described [him] as her 'Uncle' to acquaintances."

---

[1] The facts are derived from the miscellaneous petition filed by petitioner on June 9, 2022, as is appropriate when ruling on a motion for judgment on the pleadings. *See* R. Dom. Rel. P. 12(c).  We note that although respondent's motion was styled as a motion to dismiss, it was heard after respondent had filed his answer and the pleadings had closed; respondent's motion is thus more appropriately considered a motion for judgment on the pleadings. *Id.*  Nevertheless, when filed by a defendant, "the same test is applicable to both[,]" *Chariho Regional School District v. Gist*, 91 A.3d 783, 787 (R.I. 2014) (quoting *Collins v. Fairways Condominiums Association*, 592 A.2d 147, 148 (R.I. 1991)); therefore, we "assume the allegations in the petition are true and view the facts in the light most favorable to the plaintiff." *Lacera v. Department of Children, Youth, and Families*, 272 A.3d 1064, 1067 (R.I. 2022).

[2] The petitioner alleged that he made tuition payments so that Ms. Hasselbrock would be able "to get a GED, attend a secretarial school, a CNA course, and classes at CCRI."  The petitioner further alleged that he provided Ms. Hasselbrock with a cell phone and a car, that he paid her healthcare expenses because she lacked health insurance, and that he provided assistance with issues involving her landlord and roommates.

In 2013 petitioner, who resided in New Hampshire, purchased a house in Scituate, Rhode Island (the Scituate house), so that Ms. Hasselbrock would "have a place to live." The petitioner allowed Ms. Hasselbrock to live in the house "rent free and [he] paid her utilities." In 2015 Ms. Hasselbrock informed petitioner that "she was pregnant as a result of a relationship with [respondent] * * *." Ms. Hasselbrock informed petitioner that respondent did not have a full-time job, that he had two children from a previous marriage, and that he was not able to financially support the child. On June 14, 2015, Ms. Hasselbrock gave birth to a son, the child at issue in this case, and did not put respondent's name on the birth certificate. Upon the birth of the child, petitioner "provided sufficient resources" to Ms. Hasselbrock—providing for diapers, a car seat, cribs, and formula, as well as funding for childhood development programs. The petitioner prohibited respondent from living at the Scituate house; nevertheless, on several of petitioner's visits, he discovered that respondent was on the property.

The petitioner regularly visited Ms. Hasselbrock and her son at the Scituate house and stayed there overnight. The petitioner read books to the child, played with him, and went on outings with him. He occasionally called the child and spoke with Ms. Hasselbrock daily. The petitioner celebrated some holidays and birthdays with Ms. Hasselbrock and the child. As the child grew older, petitioner "continued to

purchase provisions" for Ms. Hasselbrock and paid the child's tuition at a private school.

Around March 2018, Ms. Hasselbrock was diagnosed with stage IV lung cancer. The petitioner paid for her medical expenses, drove her to doctors' appointments, and communicated with her doctors. On February 1, 2021, he moved to Little Compton, Rhode Island, to be closer to Ms. Hasselbrock and the child. Sadly, Ms. Hasselbrock passed away on February 19, 2021.

When petitioner visited the Scituate house after Ms. Hasselbrock's death, he discovered that respondent had created a bedroom in the basement, added a "gun firing range" on the property, "removed many items from the house that did not belong to him," and made other alterations to the house. The respondent "changed the combination to the front door lock on [petitioner's] house, replaced the garage door opener so that [petitioner] could not enter the house and would not allow [petitioner] to enter the house without 48 hour written notice." On April 22, 2021, petitioner evicted respondent, and consequently the child, from the Scituate house. The respondent has not allowed petitioner to see the child since that time.

**Travel**

In October 2021, petitioner filed a prior action, an amended verified petition that asserted several claims including a statutory claim to be declared a *de facto*

parent of the child pursuant to § 15-8.1-501.[3]  The amended verified petition also

asserted several related common law claims including a claim for declaratory relief

stating that petitioner was the child's *de facto* parent under the common law.  On

January 26, 2022, the first hearing justice ruled on respondent's motion to dismiss

the first action.  She questioned whether petitioner had standing to bring the action,

as he had never resided with the child.[4]  Ultimately, she concluded that petitioner's

verified petition should be dismissed due to lack of standing.  The first hearing

---

[3] The travel of the first action is derived from allegations contained in petitioner's miscellaneous petition in the present case as well as the transcript of the first hearing justice's bench decision disposing of the first action, which was referenced in respondent's amended answer and attached as an exhibit to petitioner's opposition to the motion to dismiss the present case.  The second hearing justice relied upon this bench decision in dismissing the case based upon *res judicata*.  While ordinarily a court may not consider documents outside of the pleadings when ruling on a motion for judgment on the pleadings, there is "a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Chase v. Nationwide Mutual Fire Insurance Company*, 160 A.3d 970, 973 (R.I. 2017) (quoting *Alternative Energy Inc. v. St. Paul Fire & Marine Insurance Co.*, 267 F.3d 30, 33 (1st Cir. 2001)).  We are satisfied that the transcript of the first hearing justice's bench decision in the first action is a document "susceptible to judicial notice" such that it falls under the "official public records" exception to the aforementioned rule. *Goodrow v. Bank of America, N.A.*, 184 A.3d 1121, 1126 (R.I. 2018).  The second hearing justice could therefore consider the bench decision on respondent's motion to dismiss.

[4] Pursuant to G.L. 1956 § 15-8.1-502(c), the Family Court must determine whether the person seeking to be adjudicated a *de facto* parent has standing to proceed with the action by presenting a prima facie case in his or her pleadings based on the criteria for *de facto* parentage set forth under § 15-8.1-501(a).  Pursuant to § 15-8.1-501(a)(1)(i), a plaintiff must demonstrate by clear and convincing evidence that he or she "resided with the child as a regular member of the child's household for a significant period of time[.]"

- 5 -

justice added that her role was limited to ruling only upon the statutory *de facto* parentage claim under § 15-8.1-501. The first hearing justice indicated that, if there were an alternative theory that petitioner would like to advance with respect to his verified petition, then that "would be heard on the miscellaneous calendar." Specifically, the first hearing justice stated:

> "[A]nything else that would be among the other common law claims that you have described, you are certainly not precluded from pursuing them. It's just that I have not been given that assignment, and it is the Chief [Judge] who assigns the category of cases that each of us hear. So of course you're not precluded. *I think that you are well able * * * to proceed elsewhere on those common law claims, and of course you have every right to do so. * * ** He's not precluded from proceeding on the miscellaneous calendar if you feel that he has bona fide claims under the common law * * *." (Emphasis added.)

Thus, the first hearing justice dismissed the amended verified petition and directed petitioner to refile his common law claims.

On June 9, 2022, petitioner filed the present action in Family Court, entitled "Miscellaneous Petition for Declaratory and Other Relief."[5] In the new miscellaneous petition, petitioner requested a declaratory judgment that, pursuant to the common law of Rhode Island, he was a "de facto parent, an unrelated caregiver, a de facto grandparent, and/or a de facto relative of [the child]." Alternatively,

---

[5] The June 2022 action entitled "Miscellaneous Petition for Declaratory and Other Relief" is a completely separate action from the amended verified petition filed in October of 2021.

petitioner sought a declaratory judgment that he stood "*in loco parentis* or *in loco grandparentis* to" the child or, that he was a parent by estoppel of the child. The petitioner further sought visitation with the child, appointment of a guardian *ad litem*, and a request for a referral to DCYF with respect to respondent's conduct.[6]

The respondent subsequently filed a motion to dismiss. The respondent contended that petitioner did not have standing to bring the action and that the Family Court did not have jurisdiction over the claims set forth in the miscellaneous petition. The respondent further contended (1) that the "new Uniform Parentage Act supersedes, and occupies the entire space with regard to de facto parenthood in Rhode Island"; and (2) that "petitioner does not allege to meet the criteria necessary to be considered a 'common law de facto parent.'"[7]

On November 10, 2022, the second hearing justice issued a decision on the motion to dismiss without hearing oral argument. He noted that the first hearing justice had dismissed petitioner's UPA claim but that she had not decided

---

[6] The petitioner's requests for the appointment of a guardian *ad litem* and for a referral to DCYF are not the subject of the present appeal because petitioner has offered no argument challenging the dismissal of those claims. *See McGarry v. Pielech*, 108 A.3d 998, 1005 (R.I. 2015) (holding that "failure to raise and develop [an issue] in its briefs constitutes a waiver of that issue on appeal").

[7] In his motion to dismiss, respondent also referenced correspondence from the "child's therapist," which indicated in part that the child "does not want to see the [petitioner]." The second hearing justice did not rely upon this correspondence in granting respondent's motion to dismiss. Because it is a document that falls outside of the pleadings, we also disregard it, relying solely on the allegations in petitioner's miscellaneous petition. *See, e.g.*, *Goodrow*, 184 A.3d at 1126.

petitioner's common law claims. He further stated he was treating respondent's motion to dismiss as a motion for summary judgment. Nevertheless, he clarified that the documents he had reviewed consisted of the pleadings and "what ha[d] already been decided by [the first hearing justice]."

Turning to the merits, the second hearing justice determined that he was "unable to find that the common law right would [supersede] the Parentage Act" as it pertains to *de facto* parentage. Specifically, he found that the "Parentage Act is the controlling law of the land in the State of Rhode Island as it pertains to petitions * * * claiming that a party is, in fact, a de facto parent." Regarding petitioner's other claims, the second hearing justice was "unable to determine that the plaintiff is claiming any right that is not contemplated by the [UPA]." He reasoned that, because the claims in the case before him were the same as those alleged in the previous case and because the "controversy before [the court] falls under the Act," the claims should be dismissed on the basis of *res judicata*. The second hearing justice further concluded that he would not entertain the other counts in petitioner's miscellaneous petition given that he did not feel they were proper claims. He therefore found that there were no justiciable issues before him and determined that issuing declaratory relief would thus be improper.

Thereafter, respondent filed a motion for attorneys' fees. In the motion, respondent asserted that petitioner's two actions were filed solely to harass

respondent and to hurt him financially. He alleged that the "frivolous Complaints and Motions" had caused him to incur $7,500 in attorneys' fees. On February 22, 2023, a decision was issued on respondent's motion for attorneys' fees. With respect to that motion, the second hearing justice stated:

> "Okay, let's first -- let me address the issue of attorney's fees. I think the appropriate time to file that motion would have been before the hearing. I've completed the hearing, and I've made a ruling on the hearing; and this case is closed and no further issues. So, I'm not going to hear a motion on attorney's fees based on that."

He later clarified his ruling, stating that "there was no evidence elicited during the trial for attorney's fees. So, that issue should have and could have been dealt with then, and it wasn't; therefore, the [Family] Court won't entertain it now." Subsequently, an order granting respondent's motion to dismiss and an order denying respondent's motion for attorneys' fees were entered, and the parties filed timely notices of appeal.

## Standards of Review

### Motion for Judgment on the Pleadings

Rule 12(c) of the Family Court Rules of Domestic Relations Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."[8] R. Dom. Rel. P. 12(c).

---

[8] As stated *supra*, respondent's motion is more appropriately considered a motion for judgment on the pleadings. Moreover, while the second hearing justice appeared

- 9 -

When filed by a defendant, a Rule 12(c) motion is "tantamount to a Rule 12(b)(6) motion, and the same test is applicable to both."[9] *Crenshaw v. State*, 227 A.3d 67, 71 (R.I. 2020) (deletion omitted) (quoting *Chase v. Nationwide Mutual Fire Insurance Company*, 160 A.3d 970, 973 (R.I. 2017)). "In reviewing a hearing justice's decision with respect to a Rule 12(b)(6) motion to dismiss, this Court examines the allegations contained in the plaintiff's complaint, assumes them to be true, and views them in the light most favorable to the plaintiff." *Palazzo v. Alves*, 944 A.2d 144, 149 (R.I. 2008). Testing the sufficiency of the complaint is the sole function of a motion to dismiss; therefore, granting a motion to dismiss is "appropriate 'when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief from the defendant under any set of facts that could be proven in support of the plaintiff's claim.'" *Id.* at 149-50 (quoting *Ellis v. Rhode Island Public*

---

to state that he would treat the motion as one for summary judgment, he explicitly clarified that he had reviewed the pleadings and the first hearing justice's decision. Accordingly, the second hearing justice limited his review to the pleadings and documents that fell within the narrow, official public records exception to the general rule that documents outside the pleadings are not to be considered on a Rule 12(c) motion. *See Goodrow*, 184 A.3d at 1126. As such, there was no need to convert the motion to one for summary judgment.

[9] Although we have only previously interpreted Rule 12(c) of the Superior Court Rules of Civil Procedure, the relevant language of Rules 12(b) and 12(c) of the Rules of Domestic Relations Procedure is identical to the corresponding rules of civil procedure. We, thus, apply the same standard to both. *See Lacera*, 272 A.3d at 1067 (applying the same standard for reviewing a 12(b)(6) motion filed under the Superior Court Rules of Civil Procedure to a 12(b)(6) motion filed under the Rules of Domestic Relations Procedure).

*Transit Authority*, 586 A.2d 1055, 1057 (R.I. 1991)). However, we review questions of law—such as issues of statutory interpretation and of justiciability—*de novo*. *Lacera v. Department of Children, Youth, and Families*, 272 A.3d 1064, 1067 (R.I. 2022) (noting that issues of justiciability are reviewed *de novo*); *Epic Enterprises LLC v. 10 Brown & Howard Wharf Condominium Association*, 253 A.3d 383, 387 (R.I. 2021) (noting that issues of statutory interpretation are reviewed *de novo*). Moreover, "in reviewing the trial justice's legal determinations, this Court has a prerogative to affirm a determination of a trial justice on grounds different from those enunciated in his or her decision * * *." *Preserve at Boulder Hills, LLC v. Kenyon*, 312 A.3d 475, 480 (R.I. 2024) (quoting *Miller v. Metropolitan Property and Casualty Insurance Co.*, 111 A.3d 332, 339 (R.I. 2015)).

## Attorneys' Fees

"[T]he issue of whether there exists a *basis* for awarding attorneys' fees generally is legal in nature, and therefore our review of such a ruling is *de novo*." *Danforth v. More*, 129 A.3d 63, 72 (R.I. 2016) (quoting *Shine v. Moreau*, 119 A.3d 1, 8 (R.I. 2015)). However, "[i]f it is determined that there is an adequate legal basis for such an award, then we review a trial justice's decision awarding or denying attorneys' fees for an abuse of discretion." *Id.*

- 11 -

## Analysis

The petitioner first contends that the second hearing justice erred "when he dismissed the [miscellaneous petition] on the basis of the doctrine of *res judicata* and ruling that it prevented him from hearing [petitioner's] re-pled common law claims 'in that they've already been decided by [the first hearing justice].'" Specifically, petitioner argues that the first hearing justice's "dismissal of the first action could not have involved the several common law claims which [the first hearing justice] expressly did not rule on."

The petitioner's arguments highlight the problematic and disconcerting travel of this case. At the hearing on the motion to dismiss petitioner's initial verified petition, the first hearing justice expressly stated that she was confined to hear petitioner's statutory *de facto* parentage claim under § 15-8.1-501 by virtue of the assignment she had been given by the Chief Judge. Therefore, as a result of what she characterized as a "cameo assignment," the first hearing justice expressly told the parties that any alternative theories that petitioner might wish to advance with respect to his verified petition "would be heard on the miscellaneous calendar." She thus directed the closure of the case and instructed petitioner to refile.

While we recognize that G.L. 1956 § 8-10-14 gives the Chief Judge of the Family Court "supervision and control of the calendars and of the assignment of the justices[,]" each justice of the Family Court is vested with the authority

- 12 -

"to hear and determine all petitions for * * * support and custody of children * * * all motions for allowance for support and educational costs of children attending high school at the time of their eighteenth (18th) birthday and up to ninety (90) days after high school graduation, but in no case beyond their nineteenth (19th) birthday; enforcement of any order or decree granting alimony and/or child support, and/or custody and/or visitation of any court of competent jurisdiction of another state; modification of any order or decree granting alimony and/or custody and/or visitation of any court of competent jurisdiction of another state on the ground that there has been a change of circumstances; modification of any order or decree granting child support of any court of competent jurisdiction of another state * * *; complaints for support of parents and children * * *." Section 8-10-3(a).

Therefore, no assignment to a specific calendar can divest a Family Court justice of the authority to hear additional related claims contained within the same petition, whether based on statute or common law, that fall under the jurisdiction of the court. This Court has continuously directed that the bifurcation of certain matters in the Family Court shall cease, *see, e.g.*, *Cardinale v. Cardinale*, 889 A.2d 210, 228 (R.I. 2006); *Koutroumanos v. Tzeremes*, 865 A.2d 1091, 1094 n.2 (R.I. 2005), as it unfairly requires the parties to engage in a substantial amount of duplicative litigation and has an unnecessary negative impact upon the court's time and resources. Accordingly, the doctrine of *res judicata* is inapplicable under these circumstances and we proceed to address petitioner's claims.

- 13 -

**The UPA and Common Law Claims**

On the merits, petitioner contends that the UPA does not supersede his common law claims. He specifically states that "[a] simple reading of the Act clearly demonstrates that the General Assembly did not intend for § 501 to extinguish common law *de facto* parentage and the other common law claims [petitioner] pled in his verified complaint."

This Court has previously stated that "[l]egislative enactments will 'be construed to alter the common law only to the extent that the Legislature has made that purpose clear.'" *State v. Briggs*, 934 A.2d 811, 814 (R.I. 2007) (brackets omitted) (quoting *Knowles v. Ponton*, 96 R.I. 156, 159, 190 A.2d 4, 6 (1963)); *see also Souza v. O'Hara*, 121 R.I. 88, 91, 395 A.2d 1060, 1062 (1978) (emphasizing the "well-established principle that the abrogation of a common-law right by statute requires that the legislative intent to do so be clearly expressed"); *Town of North Kingstown v. North Kingstown Teachers Association*, 110 R.I. 698, 703 n.5, 297 A.2d 342, 344 n.5 (1972) ("In this state we follow the rule that statutes in derogation of the common law should be strictly construed."). We have also emphatically stated that "it will be presumed [that] the [L]egislature intended to make only such alteration in the common law as the language of the statute naturally and necessarily indicates." *Hoffman v. Louis D. Miller & Co.*, 83 R.I. 284, 288-89, 115 A.2d 689, 691 (1955). In addition, when a "statute is in derogation of the common law * * *

- 14 -

[it] must be understood as affecting no change in that law beyond what is clearly indicated in express terms or by necessary implication." *Da Costa v. Rose*, 70 R.I. 163, 168, 37 A.2d 794, 797 (1944).

In 2020 the General Assembly enacted the UPA, which deals with the "adjudication and determination of parentage in the state of Rhode Island." Section 15-8.1-103(a). Section 15-8.1-103(c) of the UPA, which explicitly delineates the Act's scope, provides: "This chapter does not create, enlarge, or *diminish* parental rights or responsibilities under other laws of the state of Rhode Island or the equitable powers of the courts, except as provided in this chapter." (Emphasis added.)

The petitioner understandably directs our attention to the UPA's use of the word "diminish," arguing that the statute thereby "clearly indicates that existing rights were not supplanted or extinguished by the enactment of the [UPA]." The petitioner further avers that nothing in the UPA specifies that the General Assembly "intended that it would replace or repeal other long existing common law remedies for establishing parental and related rights." However, in so stating, petitioner overlooks § 15-8.1-103(c)'s concluding language: "except as provided in this chapter." The just-quoted definitive language makes it clear that the General Assembly intended for certain provisions in the statute at issue to supersede *some portions* of the common law.

- 15 -

Section 15-8.1-501 quite clearly supersedes any common law *de facto* parentage claim that petitioner has advanced. Section 15-8.1-501(a)(1) provides:

> "In a proceeding to adjudicate the parentage of an individual who claims to be a de facto parent of the child, if there is only one other individual who is a parent or has a claim to parentage of the child, the court shall adjudicate the individual who claims to be a de facto parent to be a parent of the child if the individual demonstrates by clear and convincing evidence that:
>
> > "(i) The individual resided with the child as a regular member of the child's household for a significant period of time;
> >
> > "(ii) The individual engaged in consistent caretaking of the child;
> >
> > "(iii) The individual undertook full and permanent responsibilities of a parent of the child without expectation of financial compensation;
> >
> > "(iv) The individual held out the child as the person's child;
> >
> > "(v) The individual established a bonded and dependent relationship with the child which is parental in nature;
> >
> > "(vi) The individual and another parent of the child fostered or supported the bonded and dependent relationship required under subsection (a)(1)(v) of this section; and
> >
> > "(vii) Continuing the relationship between the individual and the child is in the best interests of the child."

- 16 -

This statutory provision leaves this Court with no doubt that it was intended to supersede common law *de facto* parentage claims.[10] The explicit and unequivocally specific nature of the statute plainly reveals that, by necessary implication, the UPA does supersede common law *de facto* parentage claims. Moreover, while petitioner requests to be declared a "parent by [estoppel]," the estoppel doctrine "does not serve to *create* a right that does not otherwise exist by reason of [petitioner's] alleged parental relationship with the child * * *." *Rubano v. DiCenzo*, 759 A.2d 959, 968 (R.I. 2000). Therefore, if petitioner's *de facto* parentage claim was not superseded by the UPA, he could have used the estoppel doctrine to prevent respondent from denying the alleged father-child relationship between petitioner and the child, but he cannot assert "parent by [estoppel]" as an independent cause of action. *See id.*

Although it is our view that the UPA supersedes common law *de facto* parentage claims, we are also of the opinion that the UPA does not explicitly abrogate *all* common law claims relative to parentage (in the broad sense of that term). *See Da Costa*, 70 R.I. at 168, 37 A.2d at 797 (stating that if a "statute is in derogation of the common law * * * [it] must be understood as affecting no change in that law beyond what is clearly indicated in express terms or by necessary implication"). In addition to his common law *de facto* parentage claim, petitioner

---

[10] It should be noted that Article 5 of G.L. 1956 chapter 8.1 of title 15 is entitled "De Facto Parentage."

has set forth several other common law claims. The petitioner is further requesting (1) declaratory relief proclaiming him an "unrelated caregiver," "de facto grandparent," or "de facto relative," of the child or one who stands "*in loco grandparentis*" to the child; and (2) visitation with the child based on his "grandparent-like or relative-like relationship with [the child] * * *." These particular common law claims have neither been formally recognized nor rejected by this Court.

Even if this Court were to recognize a claim for "de facto grandparent" or "*in loco grandparentis*" we are nevertheless confronted with the fact, as acknowledged in the miscellaneous petition, that respondent, the child's father, has maintained from the inception of this case that he does not wish for the child to have any contact or relationship with petitioner. This Court has stated that "an important presumption exists that fit parents act in the best interests of their children." *Keenan v. Somberg*, 792 A.2d 47, 50 (R.I. 2002). So long as a parent is fit, there is "no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Troxel v. Granville*, 530 U.S. 57, 68-69 (2000) (plurality opinion). Therefore, "[w]e have held * * * that 'a party who seeks visitation with a child must overcome the otherwise applicable presumption in favor of honoring a fit custodial parent's determination not to allow such visitation.'" *MacTavish-Thurber v. Gauvin*,

202 A.3d 232, 239 (R.I. 2019) (quoting *Resendes v. Brown*, 966 A.2d 1249, 1254 (R.I. 2009)). To do so, a party seeking visitation as a grandparent must either establish that the parent is unfit or establish by clear and convincing evidence that the parent's decision to refuse grandparent visitation was unreasonable. *Id.* at 239-40; *see also* G.L. 1956 § 15-5-24.3(a) (setting forth the requirements for grandparent visitation).

After a careful review of the miscellaneous petition filed by petitioner, and after reading it as favorably to petitioner as possible, it is our conclusion that the petition is devoid of any actual factual allegation that respondent is a custodial parent who lacks the basic capacity to make decisions in the best interests of his child.[11] Moreover, the miscellaneous petition is devoid of factual allegations attacking the reasonableness of respondent's decision to deny petitioner visitation. Instead, the factual allegations in the miscellaneous petition—i.e., that depriving the child of a relationship with petitioner has violated Ms. Hasselbrock's wishes, taken the child away from his home and his community, and contravened the child's wishes—all touch on factors a court might consider if it were determining whether visitation with

---

[11] We are aware that petitioner, in his miscellaneous petition, has made a general request for a DCYF referral regarding respondent. However, that request by petitioner is bereft of any specific, fact-based allegations of parental unfitness sufficient to survive dismissal pursuant to Rule 12(c) of the Rules of Domestic Relations Procedure. Further, as noted *supra*, petitioner has failed to advance any arguments on appeal challenging the dismissal of his request for a DCYF referral.

petitioner was in the child's best interests. *See Pettinato v. Pettinato*, 582 A.2d 909, 913-14 (R.I. 1990) (outlining the factors a court must consider in weighing the best interests of a child). However, even taking the allegations of petitioner's miscellaneous petition as true, petitioner has been unable to clear the threshold hurdle of alleging that respondent is unfit or that his decision to deny visitation was unreasonable in order to overcome the legal presumption that respondent's decision to deny visitation was in the child's best interests, which in turn might permit petitioner to litigate his alternative common law claims for grandparent visitation.[12] *MacTavish-Thurber*, 202 A.3d at 239-40. Thus, it is our view that he is not presently entitled to pursue those common law claims.

The petitioner's only remaining claims are his request for a declaratory judgment proclaiming him an "unrelated caregiver" or a "de facto relative" of the child and his claim for visitation based upon those statuses. However, even assuming without deciding that such claims were recognized under Rhode Island law and that petitioner's claims were meritorious, this Court is of the opinion that petitioner lacks standing to pursue such claims.

Standing may be raised by this Court *sua sponte*. *In re 38 Studios Grand Jury*, 225 A.3d 224, 232 (R.I. 2020). Even when seeking declaratory relief, a

---

[12] It shall be borne in mind that this Court has never recognized or rejected the viability of petitioner's alternative claims of "de facto grandparent" or "*in loco grandparentis*"—nor are we taking either step today.

plaintiff's claim must be justiciable; thus, the plaintiff must have "standing to pursue the action and some legal hypothesis which will entitle the plaintiff to real and articulable relief." *Bowen v. Mollis*, 945 A.2d 314, 317 (R.I. 2008) (quoting *McKenna v. Williams*, 874 A.2d 217, 226 (R.I. 2005)). "A plaintiff has standing where that plaintiff has alleged 'injury in fact, economic or otherwise.'" *Lacera*, 272 A.3d at 1068 (quoting *Bowen*, 945 A.2d at 317). In the instant case, petitioner's purported standing to seek declaratory relief and visitation stems from respondent denying petitioner visitation with the child. However, "visitation rights may be granted to relatives other than parents only when specifically authorized by statute." *In re Nicholas*, 457 A.2d 1359, 1360 (R.I. 1983); *see also Gushlaw v. Rohrbaugh*, 673 A.2d 63, 64 (R.I. 1996) (holding that a child's grandparents lacked standing to seek visitation with their grandchild when they did not strictly meet the requirements of the grandparent visitation statute).

The petitioner has failed to direct the Court to a single statute that would grant him the legal right to seek visitation with the child even if he were declared an "unrelated caregiver" or a "de facto relative" of the child. The petitioner contends that this Court recognized his "unrelated caregiver" claim in *Rubano*, but he takes a quote from *Rubano* out of context. When this Court recognized that an "unrelated caregiver can develop a parent-like relationship with the child that could be substantial enough to warrant legal recognition of certain parental rights and

- 21 -

responsibilities," the aforementioned "unrelated caregiver" was in reference to a *de facto* parent. *See Rubano*, 759 A.2d at 975. Therefore, in *Rubano*, we did not recognize an "unrelated caregiver['s]" claim to parental rights; instead, we recognized the right of a *de facto* parent to establish parental rights to a child despite the person's lack of a biological relationship with the child. *Id.* However, as explained *supra*, petitioner's common law *de facto* parentage claim was superseded by the UPA. Without statutory authority to seek visitation, petitioner has no legally protected interest through which he can maintain his "unrelated caregiver" and "de facto relative" claims for visitation. *In re Nicholas*, 457 A.2d at 1360. Moreover, because petitioner is seeking to be declared an "unrelated caregiver" or a "de facto relative" specifically so that he can seek visitation, he also lacks a legally protected interest in maintaining his declaratory judgment claim to be proclaimed as such.[13] *See Lacera*, 272 A.3d at 1069 (holding that a grandparent lacked standing to seek declaratory relief related to his biological grandchild when the termination of his son's parental rights in the child deprived him of a legally

---

[13] The petitioner clarified in his objection to respondent's motion to dismiss that if "one or all of the common law claim[s]" for declaratory relief were granted, then he would be "entitled to visitation under [G.L. 1956] § 15-5-16(d)(1) and/or [§] 15-5-24.3[,]" the statutes authorizing parent and grandparent visitation respectively. Notably, he failed to cite to any statute that authorized "unrelated caregiver[s]" or "de facto relative[s]" to seek visitation.

protected interest in obtaining declaratory relief). Therefore, this Court affirms the dismissal of those claims due to petitioner's lack of standing.

## Attorneys' Fees

With respect to the respondent's cross-appeal concerning his desire to be awarded attorneys' fees, we would simply comment that we perceive absolutely no basis in the record for such an award in this case. While it is regrettable that no hearing was conducted in the Family Court regarding the respondent's motion for such fees, we do not believe that any purpose would be served by remanding this matter to the Family Court for such a hearing. The petitioner has engaged in no frivolous or otherwise improper conduct by coming to court to litigate several claims premised on a recent statute and on several common law theories upon which this Court has never passed. The American Rule equally applies in such circumstances. *See Shine*, 119 A.3d at 8 (noting this Court's staunch adherence to the American rule); *Moore v. Ballard*, 914 A.2d 487, 489 (R.I. 2007) (reaffirming the "Court's staunch adherence to the 'American rule' that requires each litigant to pay its own attorney's fees absent statutory authority or contractual liability"). Therefore, we affirm the Family Court's denial of attorneys' fees.

## Conclusion

For the reasons set forth in this opinion, we affirm the orders of the Family Court. The papers shall be returned to the Family Court.

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | Philippe L. de Vries v. Anthony L. Gaudiana, Jr. |
| **Case Number** | No. 2023-98-Appeal. (P 22-2656M)<br>No. 2023-109-Appeal. |
| **Date Opinion Filed** | August 1, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer from Lower Court** | Associate Justice Richard A. Merola |
| **Attorney(s) on Appeal** | For Petitioner:<br><br>David J. Strachman, Esq.<br>For Respondent:<br><br>Edward C. Roy, Jr., Esq. |